GERAL PIERCE, PLAINTIFF v. JOHN DANIEL JOHNSON, DEFENDANT

No. COA01-1109

(Filed 19 November 2002)

**Parties— failure to name real party in interest—motion to amend complaint—misnomer—relation back rule—equitable estoppel**

The trial court erred by denying plaintiff's motion to amend her personal injury complaint under N.C.G.S. § 1A-1, Rule 15 after it was dismissed based on failure to name the real party in interest when plaintiff, who was unaware of defendant's death, named decedent who died from medical complications unrelated to the

PIERCE v. JOHNSON

[154 N.C. App. 34 (2002)]

accident instead of his estate as the party-defendant, because: (1) N.C.G.S. § 1A-1, Rule 15(a) allows a party to amend his pleadings once as a matter of course at any time before a responsive pleading is served, and defendant's motions to dismiss under N.C.G.S. § 1A-1, Rules 12(b), 17, and 19 were not responsive pleadings; (2) the relation back rule under N.C.G.S. § 1A-1, Rule 15(c) allows for an amendment for correction of a mere misnomer when decedent and his estate, although separate, are connected and dependent legal entities; (3) the amendment will not prejudice the intended defendant; (4) the doctrine of equitable estoppel applies since the personal representative of decedent's estate and the purported attorney for defendant took no affirmative steps to inform plaintiff or her counsel that defendant was in fact dead, and their conduct led plaintiff to believe that defendant was still alive; and (5) plaintiff's recovery is limited to the extent of decedent's liability insurance since she did not present her claim to the estate in accordance with the non-claim statute of N.C.G.S. § 28A-19-3.

Appeal by plaintiff from order entered 23 April 2001 by Judge W. Douglas Albright in Superior Court, Guilford County. Heard in the Court of Appeals 5 June 2002.

*Karl E. Phillips for plaintiff-appellant.*

*Davis & Hamrick, L.L.P., by H. Lee Davis, Jr., Kent L. Hamrick, and Ann C. Rowe, for defendant-appellee.*

WYNN, Judge.

Plaintiff Geral Pierce appeals from the dismissal of her personal injury action for failure to name the real party in interest. We hold that the failure to name the real party in this case was a misnomer; accordingly, we reverse the dismissal of this action.

In short, on 14 October 1997, Ms. Pierce sustained personal injuries from a motor vehicle accident allegedly caused by the negligent driving of John Daniel Johnson. On 4 May 1999, John Daniel Johnson died from medical complications unrelated to the accident; his son, Roby Daniel Johnson qualified as executor on 24 June 1999. In accord with his duties, the executor placed a Notice to Creditors in the local newspaper requesting all claims to be presented to the estate before 21 October 1999.

On 28 April 2000—about five months before the running of the statute of limitations—apparently unaware of John Daniel Johnson's

**PIERCE v. JOHNSON**

[154 N.C. App. 34 (2002)]

death, Ms. Pierce brought an action against him to recover for her personal injuries by serving him at his last known address. On 12 May 2000, Roby Daniel Johnson, the executor for the estate of John Daniel Johnson, accepted service of the complaint by signing the name "Daniel Johnson" on the return receipt of the Certified Mail. However, rather than notify Ms. Pierce of the error in naming the decedent instead of his estate as the party-defendant, a chronology of the events that followed demonstrate that efforts were made by the executor to settle the claim.

Following the acceptance of service by the executor, on 6 June 2000, Attorney Ann C. Rowe styled as "Attorney for Defendant" moved to dismiss the action under Rules 12(b)(2), (4) and (5) for lack of jurisdiction over the person, insufficiency of process, and insufficiency of service. The motion further moved the trial court to dismiss the action for failure to name the real party in interest. In response on 10 July 2000, Ms. Pierce filed a "Proof of Service" certifying service on defendant John Daniel Johnson at his residence, along with the return receipt to the Certified Mail signed by "Daniel Johnson". Apparently, Ms. Pierce was unaware that John Daniel Johnson died on 4 May 1999 and therefore did not seek to amend the action by substituting the estate of John Daniel Johnson as the defendant; however, as a precaution, Ms. Pierce took out alias and pluries summons and kept them current until this action was dismissed by the trial court.

Following the filing of the Proof of Service by Ms. Pierce, on 26 July 2000, defendant through Attorney Rowe, made an Offer of Judgment to Ms. Pierce in the amount of $6,200.01, and served upon Ms. Pierce "Defendant's First Set of Interrogatories and Request for Production of Documents." Ms. Pierce, through counsel, obtained an extension to respond to interrogatories and filed her response on 26 September 2000. In the meantime, Attorney Rowe on behalf of defendant, made a second Offer of Judgment in the amount of $10,001.00 on 22 August 2000, and further served a Request for Monetary Relief Sought on Ms. Pierce on 21 September 2000. The offers of judgment, interrogatories and request for production of documents, request for monetary relief sought, and certificates of service for each, were all signed by Ann C. Rowe, as "Attorney for Defendant."

Following the running of the statute of limitations on 14 October 2000, Attorney Rowe gave Notice of Hearing on 16 February 2001 to bring defendant's 6 June 2000 Motion to Dismiss to hearing. According to Ms. Pierce, at the hearing, Attorney Rowe revealed for

the first time in the proceeding that her "client" died on 4 May 1999. In response, Ms. Pierce orally moved to amend and substitute the estate of John Daniel Johnson as the defendant. The trial court denied Ms. Pierce's motion to amend, and granted the motion to dismiss the complaint, with prejudice, for failure to serve the real party in interest. Ms. Pierce now appeals to us.

In the dispositive assignment of error, Ms. Pierce argues the trial court erred by denying her motion to amend her complaint under Rule 15 of the North Carolina Rules of Civil Procedure. We agree.

Rule 15(a) of the North Carolina Rules of Civil Procedure allows a party to "amend his pleadings once as a matter of course at any time before a responsive pleading is served." N.C. R. Civ. P. 15(a) (2001). Rule 7 of the North Carolina Rules of Civil Procedure identifies all of the pleadings that are allowed in a civil case and makes it clear that motions and other papers are not considered pleadings. N.C. R. Civ. P. 7 (2001). Therefore, threshold motions under Rule 12 and dispositive motions under other rules are not responsive pleadings that prevent an amendment without leave of court under Rule 15(a). 1 C. Gray Wilson, North Carolina Civil Procedure § 15-2 p. 292 (2nd ed. 1996); *see also Johnson v. Bollinger*, 86 N.C. App. 1, 7, 356 S.E.2d 378, 382 (1987).

Here, the defendant's motions to dismiss under Rules 12(b), 17, and 19, were not responsive pleadings. Likewise, the offers of judgment, interrogatories, request for production of documents, and request for monetary relief sought, were not responsive pleadings. The record further shows that Pierce had not previously amended her complaint. Therefore, we conclude Ms. Pierce was entitled under Rule 15(a) to amend her complaint.

The defendant argues, however, that our Supreme Court's ruling in *Crossman v. Moore* prevents the "relation back" of the amendment, and therefore, Ms. Pierce's suit is time barred. In *Crossman*, our Supreme Court held that the relation back principle in Rule 15(c) does not apply when the amendment seeks to substitute a party defendant to the suit. *Crossman v. Moore*, 341 N.C. 185, 187, 459 S.E.2d 715, 717 (1995). In our view, however, Ms. Pierce's failure to plead the estate of John Daniel Johnson was a misnomer, and therefore, the trial court made an error in law by not permitting an amendment under Rule 15(c).

In *Crossman*, our Supreme Court noted that North Carolina's version of Rule 15(c) is not based on the federal counterpart; indeed,

North Carolina's "relation back" rule is significantly different from the more "liberal" federal rule. N.C. Gen. Stat. § 1A-1, Rule 15(c) provides that:

> A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

Whereas, Fed. R. Civ. P. 15(c) provides that:

> An amendment of a pleading relates back to the date of the original pleading when . . . the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Thus, the federal rule provides an explicit procedure for substituting "new parties" into an action, whereas the North Carolina rule seemingly only permits the amendment of "claims." Therefore, although many federal and state courts have interpreted Rule 15 in the context we face today, those interpretations focus primarily on the "knew or should have known" language of the federal rule.[1]

Under the federal rule, the present case could summarily be resolved in Ms. Pierce's favor. However, North Carolina's legislature has adopted a more restrictive rule. Accordingly, the case law of foreign jurisdictions has limited relevance; instead, we must examine the origins of the North Carolina rule.

---

1. The following state courts have held that 15(c) permits the substitution of an estate for a decedent after the running of the statute of limitations. *Schwartz v. Wasserburger*, 30 P.3d 1114, 1117 (Nev. 2001); *Schwartz v. Douglas*, 991 P.2d 665, 668 (Wash. App. 2000); *Indiana Farmers Mut. Ins. Co. v. Richie*, 707 N.E.2d 992, 997 (Ind. 1999) (rejecting insurance company's argument that estate and decedent are two distinct legal entities under 15(c) by holding that: "This may be correct in some formal sense." However, "[n]o one disputes the identity of the alleged tortfeasor. And, although [plaintiff] must name [the estate] as the insured, the claim is, in reality, against [the] liability insurance policy"); *Nutter v. Woodard*, 34 Mass. App. Ct. 596, 599-600, 614 N.E.2d 692, 694-95 (1993).

The following states have held that 15(c) does not permit the substitution of an estate for a decedent after the running of the statute of limitations. *Damian v. Estate of Pina*, 974 P.2d 93, 95 (Idaho 1999); *Vaughn v. Speaker*, 533 N.E.2d 885, 888-89 (Ill. 1988); *Parker v. Breckin*, 620 A.2d 229, 232 (Del. 1993); *Levering v. Riverside Methodist Hosp.*, 441 N.E.2d 290, 292 (1981).

The *Crossman* Court noted that North Carolina's Rule 15 "is drawn from the New York Civil Practice Law and Rules, Rule 203(e)." *Crossman*, 341 N.C. at 187, 459 S.E.2d at 717. Under North Carolina's Rule 15(c), the Court held that the critical issue, in determining whether an amended pleading "relates back," is whether the "original [pleading gave] notice of the transactions or occurrences to be proved pursuant to the amended pleading." *Id.* Therefore, the Court reasoned that the relation back principle in Rule 15(c) is not, "as a matter of course," applicable to substituted parties because "the original claim cannot give notice of the transactions or occurrences to be proved in the amendment to a defendant who is not aware" of the original pleading." *Id.* To support this holding, our Supreme Court noted that this interpretation was "consistent with the interpretation given a similar statute in New York." *Id.*

However, in a string of cases, this Court has held that *Crossman* and Rule 15(c) does "allow for the relation back of an amendment to correct a mere misnomer." *See e.g., Liss v. Seamark Foods*, 147 N.C. App. 281, 283-84, 555 S.E.2d 365, 367 (2001); *Piland v. Hertford County Bd. of Comm'rs*, 141 N.C. App. 293, 299, 539 S.E.2d 669, 673 (2000). A misnomer is a '[m]istake in name; giving an incorrect name to [the] person in accusation, indictment, pleading, deed, or other instrument." BLACK'S LAW DICTIONARY 1000 (6th ed. 1990).

In *Liss*, this Court recognized that under New York law, the "correction of a misnomer in a pleading is allowed even after the expiration of the statute of limitations provided certain elements are met." *Liss*, 147 N.C. App. at 286, 555 S.E.2d at 368-69 (citations omitted). Specifically, an "amendment to correct a misnomer in the description of a party defendant may be granted after the expiration of the statute of limitations if (1) there is evidence the intended defendant has in fact been properly served, and (2) the intended defendant would not be prejudiced by the amendment." *Liss*, 147 N.C. App. at 286, 555 S.E.2d at 369 (citing *Pugliese v. Paneorama Italian Bakery Corp.*, 243 A.D.2d 548, 664 N.Y.S.2d 602 (1997)).

Three natural questions arise: (1) Was Ms. Pierce's error in listing John Daniel Johnson, instead of the personal representative or estate of John Daniel Johnson, a misnomer? (2) Is there evidence the intended defendant, the estate, was actually served? and (3) Will the estate be prejudiced by the amendment?

The first question is critically important because this Court, in accordance with *Crossman,* has consistently held that "[t]he notice

requirement of Rule 15(c) cannot be met where an amendment has the effect of adding a new party to the action, as opposed to correcting a misnomer." *Liss*, 147 N.C. App. at 283-84, 555 S.E.2d at 367 (quoting *Bob Killian Tire, Inc. v. Day Enters., Inc.*, 131 N.C. App. 330, 331, 506 S.E.2d 752, 753 (1998)). For instance, in *Franklin v. Winn Dixie Raleigh, Inc.*, we held that an amendment substituting "Winn Dixie Raleigh, Inc." for "Winn Dixie Stores, Inc." was adding a new party and not correcting a misnomer when both were separate corporations. 117 N.C. App. 28, 450 S.E.2d 24 (1994), *aff'd per curiam*, 342 N.C. 404, 464 S.E.2d 46 (1995).

The case *sub judice*, however, is distinguishable from *Winn Dixie Raleigh*. In *Winn Dixie Raleigh*, plaintiff named and served a separate and distinct legal entity, Winn Dixie Stores, Inc. We concluded that naming Winn Dixie Stores, Inc., rather than Winn Dixie Raleigh, Inc., was not a misnomer: "Quite simply, plaintiff sued the wrong corporation." *Id.* at 35, 450 S.E.2d at 28. As a basis for this conclusion, we noted that Winn Dixie Stores, Inc. and Winn Dixie Raleigh, Inc. are the correct names of separate and distinct corporate entities. These two corporations are connected only by a similarity in name. Thus, plaintiff's error had the effect of failing to give the intended defendant, Winn Dixie Raleigh, Inc., notice of the action. Accordingly, although plaintiff made a "mistake" by naming the wrong corporation, this mistake was not a misnomer under our laws.

Here, in contrast, John Daniel Johnson and the estate of John Daniel Johnson, although separate, are connected and dependent legal entities. Indeed, the life of John Daniel Johnson is a condition precedent to the estate of John Daniel Johnson. John Daniel Johnson, a legal entity, is transformed, after death, into the estate of John Daniel Johnson, a legal entity. Unlike Winn Dixie Raleigh, Inc. and Winn Dixie Stores, Inc., the life and estate of John Daniel Johnson are inextricably dependent: Death of the person is a point at which a legal transformation to an estate can occur. Once death occurs, the legal entity known as the life of John Daniel Johnson can never again have legal standing. As a consequence, anyone with the legal authority to accept service of process for the estate, is necessarily apprised of an adverse legal claim even if the complaint names the decedent rather than the estate as the defendant.[2]

2. The Illinois Supreme Court has held that "substitution of the estate for the decedent [is] not merely the correction of a misnomer, and [15(c)] cannot be invoked for relation back." *Vaughn v. Speaker*, 533 N.E.2d 885, 888-89 (Ill. 1988). Although the *Speaker* Court conceded an estate is the legal successor to the rights and liabilities of a decedent, the Court reasoned that an estate and a decedent must be separate and dis-

This fact, although often ignored in case law, is clearly under-stood by our legislature. For instance, under the North Carolina Rules of Civil Procedure, "[n]o action abates by reason of the death of a party . . . . In such a case, the court . . . may order the substitution of said party's personal representative . . . and allow the action to be continued by or against the substituted party." N.C. Gen. Stat. § 1A-1, Rule 25(a) (2001). Thus, there is no need to serve process upon the estate of the decedent if one has already served the decedent prior to death. *See* N.C. Gen. Stat. § 28A-19-1(c) ("In an action pending against the decedent at the time of his death . . . the substitution of the per-sonal representative . . . will constitute the presentation of a claim and no further presentation is necessary.").

Accordingly, the concerns underlying *Winn Dixie* and *Crossman*, namely that (1) the substituted party will not have notice if the amendment is allowed to relate back, and (2) the wrong legal entity was named in the complaint, are satisfied where the personal repre-sentative of the estate receives notice of an impending claim against the decedent.

A contrary decision would create inequitable and illogical results. Consider, for instance, the hypothetical case wherein a grandmother is bilked out of her life savings by a maverick. The grandmother files an action against the maverick a few months before the statute is to run, and serves the maverick by certified mail at his last known address. Unbeknownst to the grandmother, the maverick died the day before she filed her complaint; however, the complaint is accepted by the personal representative for the maverick's estate at his last known residence. Thereafter, an attorney purporting to represent the maverick, makes offers of judgment, conducts discovery, and seeks to negotiate the claim. A few months later, after the statute of limita-tion runs, the attorney seeks to dismiss the action for failure to serve the estate of the maverick. Following defendant's logic in this case,

---

tinct legal entities because an estate and a decedent can not exist contemporaneously. *Id.* However, this element, the impossibility of a life and an estate to simultaneously exist, is precisely the element that differentiates their status as "separate and distinct legal entities." For example, Lexus and Lexis, or Winn Dixie and Winn Dixie Raleigh, are separate and distinct legal entities. Nevertheless, Lexis and Lexus exist contempo-raneously. Because both legal entities can exist concurrently, mistakenly filing a law-suit against Lexis will not apprise Lexus of an adverse legal claim. However, an estate and a life can not, as the *Speaker* Court correctly noted, exist contemporaneously. Rather, a life is transformed into an estate at the moment of death. This "transforma-tion" is a bridge between the two legal entities. If one mistakenly files a lawsuit against an individual who is dead, there is logically only one other legal entity who could have been the correct subject of the litigation.

the fact that the estate of the maverick was not served would bar the grandmother's claim for her life savings. Clearly, this result is neither just, necessary, nor in accordance with the reasoning of *Crossman* or *Winn Dixie*.

Having concluded that Pierce's error was a misnomer, *Liss* demands that we determine whether an amendment is consistent with equity. First, is there evidence that the intended defendant was actually served; if so, will the amendment prejudice the intended defendant?

Here, the personal representative of the decedent's estate, Roby Daniel Johnson, was served with the summons and complaint by certified mail on 12 May 2000. Roby Daniel Johnson, as the personal representative of the estate, was the intended defendant. Therefore, the first element of *Liss* is satisfied.

Less than three months after being served, on 26 July 2000, the personal representative had obtained counsel and made an offer of settlement. From that date forward, the record indicates that the estate, the intended defendant, was represented by competent counsel. Accordingly, the intended defendant has been aware of the adverse claim since the date of service, has prepared an adequate defense, and is represented by counsel. Therefore, the second element of *Liss* is satisfied because the amendment will not prejudice the intended defendant.

In reaching this decision, we are aware that plaintiff's claim was not presented to the personal representative of Johnson's estate within the time limitations set forth in N.C. Gen. Stat. § 28A-19-3. Section 28A-19-3 is commonly referred to as a "non-claim statute," and, though similar to a statute of limitations, it serves a different purpose. *Ragan v. Hill*, 337 N.C. 667, 671, 447 S.E.2d 371, 374 (1994). The time limitations prescribed in Section 28A-19-3 "allow the personal representative to identify all claims to be made against the assets of the estate early on in the process of administering the estate . . . [and] promotes the early and final resolution of claims by barring those not presented within the identified period of time." *Id.*

Subsection (a) of section 28A-19-3 specifically requires that claims arising before the death of the decedent be presented to the personal representative or collector by the date specified in the general notice of creditors, or in cases requiring the delivery or mailing of notice under section 28A-14-1(b), within ninety days after the date

**PIERCE v. JOHNSON**

[154 N.C. App. 34 (2002)]

of delivery or mailing of the notice, if said ninety day period is later than the date specified in the general notice to creditors. The statute requires only that a claim be presented to the personal representative or collector within the stated period, with section 28A-19-1 setting out the manner in which claims may be presented. *Id.*

Under the above statutes, plaintiff in the instant case was required to present her claim to the personal representative of defendant's estate by 21 October 1999, the date specified in the general notice of creditors, and then, if not satisfied with the response, to file her personal injury action within the three-year statute of limitations period.

Ms. Pierce complied with the statute of limitations period, but did not present her claim in accordance with the non-claim statute. However, N.C. Gen. Stat. § 28A-19-3 provides:

(i) Nothing in this section shall bar:

(1) Any claim alleging the liability of the decedent or personal representative; . . .

    . . . .

to the extent that the decedent or personal representative is protected by insurance coverage with respect to such claim, proceeding or judgment . . . .

N.C. Gen. Stat. § 28A-19-3(i). Accordingly, Ms. Pierce's recovery, if any, is limited to the amount of insurance coverage available for deceased defendant's alleged negligence.

In addition to our holding that the error in this matter was a misnomer, we hold that the doctrine of equitable estoppel provides an additional ground for ruling in Ms. Pierce's favor. The doctrine of equitable estoppel may be invoked to bar a defendant from relying upon the statute of limitations. *Duke University v. Stainback*, 320 N.C. 337, 357 S.E.2d 690 (1987). Equitable estoppel arises when an individual by his acts, representations, admissions or silence, or when he had a duty to speak, intentionally or through culpable negligence, induces another to believe that certain facts exist and that the other person rightfully relies on those facts to his detriment. *Carter v. Frank Shelton, Inc.*, 62 N.C. App. 378, 303 S.E.2d 184 (1983). When estoppel is based upon an affirmative representation and an inconsistent position subsequently taken, it is not necessary that the party to be estopped have any intent to mislead or deceive the party claim-

ing the estoppel, or that the party to be estopped even be aware of the falsity of the representation when it was made. *Meacham v. Board of Educ.*, 59 N.C. App. 381, 297 S.E.2d 192 (1982).

Here, the record shows that Ms. Pierce initiated the instant action on 28 April 2000, within the statute of limitations under N.C. Gen. Stat. § 1-52(5). However, Ms. Pierce sued the decedent individually instead of bringing the suit against the personal representative or collector of defendant's estate. The summons and complaint were then served on the personal representative of defendant's estate, Roby Daniel Johnson. Instead of signing for the summons and complaint in his capacity as personal representative, Roby Daniel Johnson signed the return receipt "Daniel Johnson," the name he shared with the deceased defendant. By so doing, the personal representative of Johnson's estate missed an opportunity to inform Ms. Pierce that John Daniel Johnson was dead, and effectively, conducted the defense of the action as though John Daniel Johnson was still alive.

This misrepresentation as to the physical and legal existence of John Daniel Johnson was continued by the subsequent conduct of the purported "Attorney for Defendant." On 6 June 2000, the motion to dismiss was filed in the name of John Daniel Johnson. Although the motion to dismiss did raise the issue of Ms. Pierce's failure to name a real party in interest and failure to join a necessary party, since it was signed by the purported "Attorney for Defendant," it did not place Ms. Pierce on notice that John Daniel Johnson was in fact dead and that she needed to proceed against the personal representative of John Daniel Johnson's estate.

Additionally, after receipt of the motion, Ms. Pierce's attorney filed the proof of service certifying that service was obtained on John Daniel Johnson at his last known address. Following that, Ms. Pierce's attorney received two offers of judgment, a set of interrogatories and request for production of documents, and a request for monetary relief sought. They were all signed by the purported "Attorney for Defendant" and received within the statute of limitations. According to the record, the personal representative of John Daniel Johnson's estate and the purported "Attorney for Defendant" took no affirmative steps to inform Ms. Pierce or her counsel that defendant was in fact dead. Had they done so, Ms. Pierce would have been able to amend her complaint to substitute the personal representative as party defendant within the statute of limitations, which did not expire until 14 October 2000.

As a result of the conduct of the personal representative and the purported "Attorney for Defendant," Ms. Pierce was apparently led to believe that John Daniel Johnson was still alive. By the 8 March 2001 hearing, the statute of limitations expired and Ms. Pierce was without recourse. John Daniel Johnson's estate should not benefit from such conduct. By their action, the personal representative of John Daniel Johnson's estate and the purported "Attorney for Defendant" led Ms. Pierce to believe that John Daniel Johnson was still alive. Ms. Pierce and her counsel apparently relied on this representation. John Daniel Johnson's estate cannot now assert an inconsistent position to the detriment of Ms. Pierce. Consequently, we hold as an additional ground for granting relief to Ms. Pierce that John Daniel Johnson's estate was equitably estopped from asserting the statute of limitations as a defense to Pierce's action.

In summation, we hold the trial court erred in denying Ms. Pierce's motion to amend her complaint—Ms. Pierce's error was a misnomer; the intended defendant was served; and the amendment will not prejudice the actual defendant. However, because Ms. Pierce did not present her claim to the estate in accordance with the non-claim statute, N.C. Gen. Stat. § 28A-19-3, Ms. Pierce's recovery is limited to the extent of the decedent's liability insurance.

Reversed and Remanded.

Judges HUNTER and THOMAS concur.