KEISHA PURVIS, PHILIP PURVIS, AND MONICA COOPER EDWARDS, GUARDIAN AD LITEM FOR AERON PURVIS, A MINOR, PLAINTIFFS v. MOSES H. CONE MEMORIAL HOSPITAL SERVICE CORPORATION, D/B/A MOSES CONE HEALTH SYSTEM, D/B/A THE WOMEN'S HOSPITAL OF GREENSBORO, BERNARD A. MARSHALL, M.D., CHARLES A. HARPER, M.D., AND McARTHUR NEWELL, M.D., DEFENDANTS

No. COA04-1418

(Filed 17 January 2006)

**1. Medical Malpractice— standard of care—contemporaneous knowledge**

Summary judgment was correctly granted for defendant in a Greensboro medical malpractice case where the doctor who testified about the standard of care had never been to Greensboro, had no colleagues there, had reviewed no demographic information about Greensboro, and had relied on Internet materials dated about four and a half years after the birth in question. N.C.G.S. § 90-21.12.

**2. Estates— survival of action—substitution of executrix— not automatic**

A summary judgment in a medical malpractice action was remanded where the defendant died, his executrix was not substituted as a party, and there was no party in favor of whom summary judgment could be granted. The right to defend any action against the deceased survives against the personal representative under N.C.G.S. § 28A-18-1(a), but substitution is not automatic. Furthermore, although the parties urged the Court of Appeals to address the merits of a substitution motion, it must be decided in the first instance by the trial court. N.C.G.S. § 1A-1, Rule 25(a).

Appeal by plaintiffs from orders entered 10 May 2004 and 17 May 2004 by Judge Orlando F. Hudson, Jr., in Wake County Superior Court. Heard in the Court of Appeals 18 May 2005.

*Greeson Law Offices, by Harold F. Greeson; and Shar, Rosen & Warshaw, LLC, by Michael S. Warshaw, for plaintiffs-appellants.*

*Cranfill, Sumner & Hartzog, L.L.P., by David H. Batten, Leigh Ann Smith, and Kari R. Johnson, for defendant-appellee Bernard A. Marshall, M.D.*

*Yates, McLamb & Weyher, L.L.P., by Jason D. Newton, for defendant-appellee McArthur Newell, M.D.*

GEER, Judge.

Plaintiffs Keisha and Philip Purvis, along with their son Aeron Purvis through his Guardian ad Litem Monica Cooper Edwards, brought a medical malpractice action against defendants Bernard A. Marshall, M.D. and McArthur Newell, M.D., alleging negligence in connection with Aeron's delivery. Plaintiffs appeal from a grant of summary judgment in favor of defendants. While we hold that summary judgment was proper as to Dr. Marshall because plaintiffs failed to establish that their sole standard of care expert was qualified to testify under N.C. Gen. Stat. § 90-20.12 (2003), we must reverse as to defendant Newell. Although Dr. Newell had died during the pendency of the lawsuit, the trial court did not rule on plaintiffs' motion to substitute the executrix for the estate as a party defendant. Without the substitution of the executrix, there was no party to seek summary judgment, and there was no party on whose behalf the court could enter judgment.

## Facts

Keisha Purvis became pregnant in 1998. She experienced an uneventful pregnancy under the care of her regular obstetrician/gynecologist, Dr. Marshall. On Saturday, 13 February 1999, Ms. Purvis began experiencing contractions and sought care at The Women's Hospital of Greensboro ("Women's Hospital"). She was first seen by Dr. Charles Harper, who sent her home with instructions to see Dr. Marshall on Monday.

Ms. Purvis returned to Women's Hospital two hours later, in the early morning hours of 14 February 1999, because her water had broken. She was admitted and placed on an electronic fetal monitor. At that time, Dr. Newell was the supervising physician on call. Ms. Purvis remained at Women's Hospital under Dr. Newell's care through 14 February and overnight into 15 February.

Ms. Purvis came under the care of Dr. Marshall at approximately 4:30 a.m. on 15 February. Dr. Marshall monitored her progress through the morning of 15 February until Aeron was delivered in the early afternoon. When Aeron was delivered, his umbilical cord was wrapped around his neck. He appeared blue or gray in color and was "depressed" or oxygen-deprived. Aeron was ventilated and received medication, measures that revived him after about two minutes.

For the first few hours of Aeron's life, he appeared to be a normal infant. In the sixth hour, he had a seizure while he was with his mother, followed by a second one when he was in the nursery. Aeron was transferred to the hospital's neonatal intensive care unit "for further evaluation and management." He was eventually diagnosed with "neurologic problems, including spastic cerebral palsy, mental retardation, seizure disorder, cortical visual impairment, and microcephaly," resulting from "a hypoxic ischemic injury leading to an encephalopathy."

On 9 January 2002, plaintiffs filed a medical malpractice action against four defendants: (1) The Moses H. Cone Memorial Health Service Corporation, d/b/a The Moses Cone Health System, d/b/a The Women's Hospital of Greensboro; (2) Dr. Harper; (3) Dr. Marshall; and (4) Dr. Newell. Plaintiffs alleged generally that defendants were negligent in failing to detect Aeron's fetal distress such that delivery could be initiated in a timely manner.

Dr. Newell passed away on 9 July 2002. On 13 January 2004, plaintiff filed a motion to substitute "Dottie Jean Ambrose Newell, Executrix of the Estate of McArthur Newell, deceased." The trial court never ruled on this motion. Nevertheless, counsel for Dr. Newell filed a motion for summary judgment on 4 February 2004, an amended motion on 16 March 2004, and a second amended motion on 28 April 2004. Dr. Marshall filed a motion for summary judgment on 14 April 2004.

On 10 May 2004, the superior court entered an order granting summary judgment to Dr. Marshall. Likewise, on 17 May 2004, the court entered summary judgment "in favor of defendant McArthur Newell, M.D. (and his estate)." On 3 June 2004, plaintiffs voluntarily dismissed their claims against Women's Hospital without prejudice. They had previously, on 21 October 2003, voluntarily dismissed their claims against Dr. Harper without prejudice. Plaintiffs timely appealed from the two summary judgment orders.

---

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). In deciding the motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 James W. Moore et al.,

*Moore's Federal Practice* § 56-15[3], at 2337 (2d ed. 1971)). The party moving for summary judgment has the burden of establishing the lack of any triable issue. *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party meets its burden, then the non-moving party must "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Id.* We review a trial court's grant of summary judgment *de novo. Coastal Plains Utils., Inc. v. New Hanover County*, 166 N.C. App. 333, 340-41, 601 S.E.2d 915, 920 (2004).

## Marshall Summary Judgment Order

**[1]** In a medical malpractice action, a plaintiff has the burden of showing "(1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." *Weatherford v. Glassman*, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998). Defendant Marshall has argued that summary judgment was proper because plaintiffs failed to offer competent evidence of the standard of care and of proximate cause. We agree with respect to the standard of care.

N.C. Gen. Stat. § 90-21.12 sets forth the standard of care in a medical malpractice case:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among *members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.*

*Id.* (emphasis added). "Because questions regarding the standard of care for health care professionals ordinarily require highly specialized knowledge, the plaintiff must establish the relevant standard of care through expert testimony." *Smith v. Whitmer*, 159 N.C. App. 192, 195, 582 S.E.2d 669, 671-72 (2003).

In opposing a motion for summary judgment in a medical malpractice case, a plaintiff must demonstrate that his expert witness is

"competent to testify as an expert witness to establish the appropriate standard of care" in the relevant community. *Billings v. Rosenstein*, 174 N.C. App. 191, 196, 619 S.E.2d 922, 925 (2005). In other words, in order "[t]o establish the relevant standard of care for a medical malpractice action, an expert witness must demonstrate that he is familiar with the standard of care in the community where the injury occurred, or the standard of care in similar communities." *Id.* at 195-96, 619 S.E.2d at 923. In the absence of such a showing, summary judgment is properly granted. *Whitmer*, 159 N.C. App. at 197, 582 S.E.2d at 673 (holding that because plaintiff's sole expert witness was not sufficiently familiar with the pertinent standard of care under N.C. Gen. Stat. § 90-21.12, his testimony was properly excluded, "render[ing] plaintiff unable to establish an essential element of his claim, namely, the applicable standard of care"). *See also Weatherford*, 129 N.C. App. at 623, 500 S.E.2d at 469 (holding that deposition testimony offered in opposition to a motion for summary judgment in a medical malpractice case must reveal that the witness is competent to testify as to the matters at issue).

We must, therefore, determine whether plaintiffs' sole standard of care expert, Dr. Alphonzo Overstreet, was competent to give standard of care testimony under N.C. Gen. Stat. § 90-21.12. An expert may "testify regarding the applicable standard of care in a medical malpractice case 'when that physician is familiar with the experience and training of the defendant and either (1) the physician is familiar with the standard of care in the defendant's community, or (2) the physician is familiar with the medical resources available in the defendant's community and is familiar with the standard of care in other communities having access to similar resources.' " *Barham v. Hawk*, 165 N.C. App. 708, 712, 600 S.E.2d 1, 4 (2004) (quoting *Henry v. Southeastern OB-GYN Assocs., P.A.*, 145 N.C. App. 208, 213-14, 550 S.E.2d 245, 248-49 (Greene, J., concurring), *aff'd per curiam*, 354 N.C. 570, 557 S.E.2d 530 (2001)), *disc. review allowed*, 359 N.C. 410, 612 S.E.2d 316 (2005).

Dr. Overstreet's familiarity with the experience and training of Dr. Marshall is not at issue. Since it is equally undisputed that Dr. Overstreet has no personal knowledge of Greensboro or Women's Hospital, the pertinent question is whether Dr. Overstreet demonstrated a sufficient familiarity with the medical resources available in Dr. Marshall's community and with the standard of care in other communities having access to similar resources. *Id.*

In arguing that Dr. Overstreet had the necessary knowledge, plaintiffs point to the fact that they forwarded to Dr. Overstreet materials obtained on the Internet regarding Women's Hospital. Plaintiffs rely upon the following deposition testimony to establish Dr. Overstreet's competence to testify:

Q. Dr. Overstreet, do you recall that some months ago I provided you some information that I had obtained off the Internet concerning Women's Hospital of Greensboro?

A. Yes.

Q. And did you review that information when I provided it to you?

A. Yes, I did.

Q. And I happen to know, since we've met earlier today, you don't have that with you today, do you?

A. No.

Q. That information was just for counsel's edification and I'm sure you recall was attached to Dr. Bootstaylor's deposition as an exhibit.

If I were to proffer to you, Dr. Overstreet, that the information provided and placed on the Internet by Women's Hospital represented that hospital to be 130-bed, state of the art facility dedicated to the treatment of women and infants containing a level 2 and level 3 NICU, on staff neonatologist, a perinatologist and 24-hour anesthetic care, do you recall those features of Women's Hospital from what you reviewed?

A. Yeah, that's pretty much what I remember.

Q. Are you familiar with any hospitals here in the Atlanta area that are similar in nature to that description of Women's Hospital?

A. Yes.

Q. And what hospitals would those be?

A. I'm sure there are quite a few, but I've only practiced out of three of them, and all three would fit in that category.

. . . .

**PURVIS v. MOSES H. CONE MEM'L HOSP. SERV. CORP.**

[175 N.C. App. 474 (2006)]

Q. Are you familiar with the standards of care practiced in those facilities here in Atlanta that are comparable to Women's Hospital of Greensboro?

A. Yes.

Q. And in reviewing this case and offering opinions in this case, are you applying the standards of care that you are familiar with that are practiced at facilities that are comparable to Women's Hospital of Greensboro?

. . . .

THE WITNESS: Yes.

Review of Dr. Overstreet's deposition reveals that he had never been to Greensboro, had no colleagues there, had reviewed no demographic information regarding Greensboro, and was relying solely on the Internet materials supplied by plaintiffs' counsel as the source of his information about Women's Hospital.

The Internet materials forwarded to Dr. Overstreet consisted of printouts of web pages from Women's Hospital's website, listing programs and services provided by the hospital and describing the types of specialist care available to patients. The printouts bear the date of 1 August 2003, approximately four and a half years after Aeron's birth in February 1998.

Plaintiffs argue that this testimony is sufficient to establish Dr. Overstreet's competency to give standard of care testimony under *Cox v. Steffes*, 161 N.C. App. 237, 587 S.E.2d 908 (2003), *disc. review denied*, 358 N.C. 233, 595 S.E.2d 148 (2004) and *Coffman v. Roberson*, 153 N.C. App. 618, 571 S.E.2d 255 (2002), *disc. review denied*, 356 N.C. 668, 577 S.E.2d 111 (2003), in both of which cases the expert witness relied upon information obtained from the Internet. N.C. Gen. Stat. § 90-21.12, however, specifically states that the expert must be familiar with the standard of care in the same or similar community "at the time of the alleged act giving rise to the cause of action." Dr. Overstreet only had knowledge of Women's Hospital's resources—and thus the applicable standard of care—at a time more than four years after the alleged malpractice.

The record does not contain any indication that the resources available at Women's Hospital and the standard of care were the same in 1998 as in 2003. We cannot assume—as we would have to do in order to deem Dr. Overstreet competent to testify—that the

resources and standard of care remained unchanged at Women's Hospital for a period of more than four years. Dr. Overstreet has, therefore, failed to meet the requirement of contemporaneousness set forth in the plain language of the statute. *See Cox,* 161 N.C. App. at 244, 587 S.E.2d at 913 ("Dr. Donnelly specifically testified that he was familiar with the standard of care for board-certified physicians such as Dr. Steffes practicing in Fayetteville or a similar community *in 1994* with respect to post-operative care after a Nissen fundoplication procedure." (emphasis added)).

Although summary judgment is a drastic remedy, *Capital Outdoor, Inc. v. Tolson,* 159 N.C. App. 55, 59, 582 S.E.2d 717, 720, *disc. review denied,* 357 N.C. 504, 587 S.E.2d 662 (2003), and it has long been established that "issues of negligence are rarely appropriate for summary judgment," *Diorio v. Penny,* 103 N.C. App. 407, 405 S.E.2d 789 (1991), *aff'd,* 331 N.C. 726, 417 S.E.2d 457 (1992), we are compelled to affirm summary judgment in favor of Dr. Marshall in this case. Dr. Overstreet was plaintiffs' sole standard of care expert. As he was not competent to testify regarding the standard of care under N.C. Gen. Stat. § 90-20.12 as it existed in 1998, the trial court correctly concluded that plaintiffs had failed to forecast sufficient evidence to meet one of the essential elements of their claim and that summary judgment should be granted.

## Newell Summary Judgment Order

[2] We cannot, however, reach the merits with respect to the order granting summary judgment as to Dr. Newell. We are confronted with a record in which Dr. Newell passed away in 2002, but the executrix for his estate has not yet been substituted as a party. Under North Carolina law, there is currently no party in favor of whom summary judgment could be granted.

According to the record, it appears that on 19 February 2003, plaintiffs proposed to defendants that Dr. Newell's estate be substituted for Dr. Newell. Counsel for Dr. Newell refused to agree to the substitution unless plaintiffs agreed to limit any recovery to Dr. Newell's insurance coverage, a stipulation to which plaintiffs would not consent. Instead, plaintiffs filed a motion on 28 April 2004, requesting that the trial court substitute the executrix for Dr. Newell's estate as a party defendant without any limitations on the source of recovery. The trial court, however, never ruled on plaintiffs' motion for substitution.

As this Court explained with respect to a lawsuit mistakenly brought against a deceased person named John Daniel Johnson rather than against his estate:

> John Daniel Johnson, a legal entity, is transformed, after death, into the estate of John Daniel Johnson, a legal entity. . . . [T]he life and estate of John Daniel Johnson are inextricably dependent: Death of the person is a point at which a legal transformation to an estate can occur. Once death occurs, the legal entity known as the life of John Daniel Johnson can never again have legal standing.

*Pierce v. Johnson*, 154 N.C. App. 34, 40, 571 S.E.2d 661, 665 (2002). In recognition of this principle, N.C. Gen. Stat. § 28A-18-1(a) (2003) provides that upon the death of any person, all right to defend any action existing against the deceased "shall survive . . . against the personal representative or collector of his estate."

As a result, when Dr. Newell died, this action did not abate, but it could not be continued *against* Dr. Newell or his estate generally. The action survived only against the personal representative or collector of Dr. Newell's estate. *Shaw v. Mintz*, 151 N.C. App. 82, 86, 564 S.E.2d 593, 596 (Greene, J., dissenting) ("An injured party's right to proceed with a claim against a person she claims to have negligently caused her injuries is not abated by the death of the party alleged to have been negligent, as the action survives against the personal representative or collector of the decedent's estate."), *adopted per curiam*, 356 N.C. 603, 572 S.E.2d 782 (2002). The personal representative must then be substituted under N.C.R. Civ. P. 25(a). *Dixon v. Hill*, 174 N.C. App. 252, 620 S.E.2d 715, 720 (2005) (reversing grant of summary judgment against deceased defendant when the administrator of the estate, although having knowledge of the claim, had not yet been substituted as a party); *In re Estate of Etheridge*, 33 N.C. App. 585, 587, 235 S.E.2d 924, 926 (1977) ("If, as in the case at bar, there is a death of a party to an action, then G.S. 1A-1, Rule 25(a) . . . requires the substitution of either a personal representative *or* a successor in interest.").

Thus, at the present moment, the trial court's summary judgment order with respect to Dr. Newell has no effect: it cannot be effective as to Dr. Newell's estate because the executrix for that estate has never been made a party to the action, and it cannot be effective as to Dr. Newell himself because he passed away. Although the parties urge the Court to address the merits of plaintiffs' substitution motion on

appeal, we cannot do so because the trial court entered no ruling on that motion.

Rule 10 of the North Carolina Rules of Appellate Procedure states:

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. *It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.*

N.C.R. App. P. 10(b)(1) (emphasis added). Substitution in the event of death is not automatic and, accordingly, whether or not to allow substitution must be decided in the first instance by the trial court. We have no choice but to vacate the trial court's summary judgment order with respect to "Dr. Newell (and his estate)" and remand for further proceedings.

Vacated and remanded in part, and affirmed in part.

Judges HUNTER and HUDSON concur.