RAY C. WHITE, IN HIS CAPACITY AS GUARDIAN OF THE ESTATE OF AUDREE SHORE MILLS PLAINTIFF, V. HAROLD L. AND AUDREE S. MILLS CHARITABLE REMAINDER UNITRUST; FLETCHERL.HARTSELL, JR., IN HIS CAPACITY AS TRUSTEE OF THE HAROLD L. AND AUDREE S. MILLS CHARITABLE REMAINDER UNITRUST; H & A MILLS PROPERTIES, LLC; EDMOND THOMAS HARTSELL, IN HIS CAPACITY AS MANAGER OF H & A MILLS PROPERTIES, LLC; THE ESTATE OF HAROLD L. MILLS; EDMOND THOMAS HARTSELL, INDIVIDUALLY AND [IN] HIS CAPACITY AS EXECUTOR OF THE ESTATE OF HAROLD L. MILLS; AND MCGILL BAPTIST CHURCH OF CONCORD, NORTH CAROLINA, INC., DEFENDANTS

NO. COA11-1351

(Filed 7 August 2012)

**1. Guardian and Ward—death of ward—guardian no longer had authority to maintain action**

The trial court erred when it entered its summary judgment order after desendant's death because then-named plaintiff Mr. White, in his capacity as guardian of decedant's estate, no longer had the authority to sustain the present action on behalf of decedant's estate under N.C.G.S. § 35A 1251(3). The case was remanded for the trial court's consideration of those issues, if any, presented by Mr. Bland, as collector of Mrs. Mills' estate.

**2. Powers of Attorney—competency at time of execution—question of fact**

The issue of Mrs. Mills' competence at the time of the execution of the 2005 power of attorney was a question of fact that should be considered and determined by a fact-finder.

**WHITE v. MILLS**

[222 N.C. App. 277 (2012)]

Appeal by plaintiff from order entered 5 March 2010 by Judge Tanya T. Wallace in Cabarrus County Superior Court. Heard in the Court of Appeals 5 June 2012.

*Weaver, Bennett & Bland, P.A., by Michael David Bland, for plaintiff-appellant.*

*Poyner Spruill LLP, by Cynthia L. Van Horne and E. Fitzgerald Parnell, III, for defendant–appellee Fletcher L. Hartsell, Jr.*

*Orsbon & Fenninger, LLP, by R. Anthony Orsbon, for defendants-appellees H & A Mills Properties, LLC, The Estate of Harold L. Mills, and Edmond Thomas Hartsell, Individually and in his capacity as Executor of the Estate of Harold L. Mills.*

*James, McElroy & Diehl, P.A., by John S. Arrowood and Edward T. Hinson, Jr., for defendant–appellee McGill Baptist Church of Concord, North Carolina, Inc.*

MARTIN, Chief Judge.

Michael David Bland, in his capacity as Collector of the Estate of Audree Shore Mills, appeals from the trial court's order denying a motion for partial summary judgment—originally filed by then-plaintiff Ray C. White, in his capacity as Guardian of the Estate of Audree Shore Mills—and entering partial summary judgment in favor of the following defendants: Harold L. and Audree S. Mills Charitable Remainder Unitrust; Fletcher L. Hartsell, Jr., in his capacity as Trustee of the Harold L. and Audree S. Mills Charitable Remainder Unitrust; H & A Mills Properties, LLC; the Estate of Harold L. Mills ("Mr. Mills' Estate"); Edmond Thomas Hartsell, in his capacities as Manager of H & A Mills Properties, LLC, as Executor of Mr. Mills' Estate, and as an individual; and McGill Baptist Church of Concord, North Carolina, Inc. For the reasons stated, we vacate the trial court's order.

On 27 August 1996, Audree Shore Mills executed an eight-page durable power of attorney ("the 1996 POA"), in which she appointed her husband Harold L. Mills or Central Carolina Bank and Trust Company to serve as her attorney-in-fact and conveyed upon them the power and authority to act on her behalf with respect to a number of matters, including: to collect and control "any sums of money"; to sell or otherwise dispose of "all or any part of [Mrs. Mills'] real or personal property or [her] interest in such property"; to continue to own or to "form initially" and operate "any business interest" and to dispose of any part of such business interest; to borrow or lend

money "upon any terms and conditions"; to register, hold, and vote any securities; to make gifts of Mrs. Mills' real or personal property; and to assign, transfer, and convey "all or any part of [Mrs. Mills'] real or personal property" to any revocable trust established by Mrs. Mills or by her attorney-in-fact during her lifetime. In addition, Article VII, Paragraph F of the 1996 POA provided the following further instructions:

> If this Power of Attorney has not been registered in an office of the register of deeds in any county in North Carolina, then in addition to the methods of revocation provided by [N.C.G.S. § 32A 13(b)], this Power of Attorney may be revoked by my executing and acknowledging, in the manner provided for execution of durable powers of attorney in Article 2 of Chapter 32A of the General Statutes of North Carolina, a subsequent Power of Attorney, a copy of which is delivered to the Attorney-in-Fact acting under this Power of Attorney in person or to such person's last known address by certified or registered mail, return receipt requested.

The 1996 POA was not recorded in the Cabarrus County Register of Deeds until 14 December 2009.

However, on 21 June 2005—almost five years before the 1996 POA was recorded—Mrs. Mills executed another durable power of attorney ("the 2005 POA"), in which she appointed only her husband to serve as her attorney-in-fact. In contrast to the detailed terms of the eight-page 1996 POA, the 2005 POA was a two-page short form durable power of attorney, which borrowed its content from a then-outdated version of N.C.G.S. § 32A 1[1], and indicated Mrs. Mills' intent-by-check-mark that Mr. Mills was authorized to act on her behalf with respect to the following matters: "Real property transactions";

---

1. Although N.C.G.S. § 32A 1 was amended in 1995, it appears that, based on the language of the form included in the record before us, the content of the 2005 POA was derived from a version of N.C.G.S. § 32A 1 that pre-dated the 1995 amendments. The 1995 amendments to N.C.G.S. § 32A 1 enumerated two additional powers that could be conveyed through a statutory short form power of attorney, which included the power to convey "[g]ifts to charities, and to individuals other than the attorney-in-fact" and "[g]ifts to the named attorney-in-fact." See 1995 N.C. Sess. Laws 786, 787, ch. 331, sec. 1; see also N.C. Gen. Stat. § 32A 1, items (14) and (15) (2011); see generally Whitford v. Gaskill, 345 N.C. 475, 478–79, 480 S.E.2d 690, 692–93 ("[A]n attorney-in-fact acting pursuant to a broad general power of attorney lacks the authority to make a gift of the principal's real property unless that power is expressly conferred. . . . [Consequently and in light of the General Assembly's 1995 amendment to N.C.G.S. § 32A 1, t]he principal must specifically acknowledge (by initialing this section) his or her intent to confer the authority to make gifts."), disposition modified on reh'g by 345 N.C. 762, 489 S.E.2d 177 (1997).

"Personal property transactions"; "Banking transactions"; "Personal relationships and affairs"; and "Tax." The 2005 POA did not, by its enumerated terms, expressly revoke the then-as-yet-unrecorded 1996 POA, and was itself recorded with the Cabarrus County Register of Deeds on 24 June 2005.

In September 2005, Mr. Mills' nephew filed a Petition for Adjudication of Incompetence and Application for Appointment of Guardian, by which he sought to have Mrs. Mills declared incompetent. Almost a year-and-a-half later, on 28 December 2006, H & A Mills Properties, LLC ("the LLC") was formed by operating agreement, establishing Mr. and Mrs. Mills as the LLC's sole and equal members, and designating E. Thomas Hartsell and Mr. Mills as its managers. Within the next week, two non-warranty deeds were recorded, one in Mecklenburg County and one in Cabarrus County, conveying a total of sixteen tracts of land from Mr. and Mrs. Mills to the LLC. The following month, on 9 February 2007, the Harold L. and Audree S. Mills Charitable Remainder Unitrust ("the Unitrust") was established by an instrument that named Mr. and Mrs. Mills as the Unitrust's grantors and Fletcher L. Hartsell, Jr. as its trustee, and provided that "100% of the ownership interest of the [LLC]" would constitute the original property of the Unitrust. According to the record, the establishing instruments of both the LLC and the Unitrust were each signed once by Mrs. Mills on her own behalf, and twice by Mr. Mills; once on his own behalf, and once on behalf of Mrs. Mills as her attorney-in-fact. The deeds conveying the real property from Mr. and Mrs. Mills to the LLC were not signed by Mrs. Mills, and were instead signed twice by Mr. Mills; once on his own behalf, and once on behalf of Mrs. Mills as her attorney-in-fact.

On 1 May 2008, Mrs. Mills was adjudicated incompetent by the Cabarrus County Clerk of Superior Court and, three months later, Ray C. White was appointed to serve as Guardian of the Estate of Audree Shore Mills ("Mrs. Mills' Estate"). On 9 September 2008, Mr. White, in his capacity as Guardian of Mrs. Mills' Estate, filed a complaint against defendants in which he challenged the formation of the LLC and of the Unitrust based on Mrs. Mills' incompetence and based on claims of unjust enrichment, breach of fiduciary duties, constructive fraud, and conversion. In addition to seeking damages and attorney's fees, Mr. White asked the trial court to rescind the transfers of real property to the LLC, to rescind the transfer of the LLC's assets to the Unitrust, and to return the real property or the proceeds of any subsequent sale of such properties to Mr. and Mrs. Mills' respective

estates. Mr. White then moved for summary judgment as to six of his ten claims.

Since the 1996 POA was not recorded at the time that Mr. White was appointed to serve as Guardian of Mrs. Mills' Estate, Mr. White first learned of the existence of the 1996 POA only after it was recorded in the Cabarrus County Register of Deeds—less than three hours before the court heard arguments regarding his motion for partial summary judgment on 14 December 2009. Four days later, Mr. White recorded a Revocation of Durable Power of Attorney with the Cabarrus County Register of Deeds, in which he sought to revoke the 1996 POA in accordance with his authority as Guardian pursuant to N.C.G.S. § 32A 10(a), based on allegations that the 1996 POA was recorded "by a third party with no apparent standing to file [the document] and no authorization from Audree S. Mills, an adjudicated incompetent, from [Mr. White,] as Guardian of the Estate of Audree S. Mills, or from Harold L. Mills, deceased, to file [the document]."

About six weeks later, on 29 January 2010, Mrs. Mills died. The following week, defendants moved to dismiss the complaint on the grounds that, pursuant to N.C.G.S. § 35A 1295, Mr. White's powers and duties to serve as Guardian of Mrs. Mills' Estate and to maintain the underlying action terminated upon Mrs. Mills' death and, therefore, Mr. White lacked standing to prosecute the claims further. Mr. White moved to stay the proceedings pending the appointment of a personal representative of, or a collector for, Mrs. Mills' Estate. Then, with defendants' motion to dismiss and plaintiff's motion to stay both still pending, on 5 March 2010, the trial court entered an order in which it determined that the 1996 POA was "duly and properly recorded," and that Mr. Mills was acting within his authority as Mrs. Mills' attorney-in-fact when he conveyed their real property to the Unitrust through the LLC. After determining that there were no genuine issues of any material fact, the trial court granted partial summary judgment in favor of defendants and dismissed the challenged claims with prejudice as a matter of law.

More than fifteen months later, in June 2011, the assistant clerk of court appointed Michael David Bland as Collector of Mrs. Mills' Estate. Then, pursuant to Rule 25(c) of the North Carolina Rules of Civil Procedure, Mr. Bland moved, with defendants' consent, to substitute himself, in his capacity as Collector of Mrs. Mills' Estate, as the named plaintiff in this action, which the court allowed. After Mr. Bland, in his capacity as Collector of Mrs. Mills' Estate, voluntarily dismissed the remaining claims that had been retained by the court

for further proceedings, Mr. Bland appealed from the court's 5 March 2010 order granting summary judgment.

---

**[1]** Mr. Bland first contends the trial court erred when it entered its summary judgment order after Mrs. Mills' death because he asserts that then-named plaintiff—Mr. White, in his capacity as Guardian of Mrs. Mills' Estate—no longer had the authority to sustain the present action on behalf of Mrs. Mills' Estate. We agree.

The guardian of an estate has the power "[t]o maintain any appropriate action or proceeding to recover possession of any of the ward's property . . . ; also, to compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle any other claims in favor of or against the ward." N.C. Gen. Stat. § 35A 1251(3) (2011). Nonetheless, "[e]very guardianship shall be terminated and all powers and duties of the guardian . . . shall cease when the ward . . . [d]ies." N.C. Gen. Stat. § 35A 1295(a)(3) (2011). Upon such death, "all demands whatsoever, and rights to prosecute or defend any action or special proceeding, existing in favor of or against such person . . . shall survive to and against *the personal representative or collector of the person's estate*," *see* N.C. Gen. Stat. § 28A 18 1(a) (2011) (emphasis added), and "the court . . . may order the substitution of said . . . personal representative or collector and allow the action to be continued by or against the substituted party." *See* N.C. Gen. Stat. § 1A 1, Rule 25(a) (2011).

In *Purvis v. Moses H. Cone Memorial Hospital Service Corp.*, 175 N.C. App. 474, 624 S.E.2d 380 (2006), one of four named defendants in a medical malpractice action—Dr. Newell, the supervising physician on call—passed away during the pendency of the action. *See id.* at 475–76, 624 S.E.2d at 382–83. Almost eighteen months after Dr. Newell's death, plaintiffs filed a motion to substitute the executrix of Dr. Newell's estate as a named party to the action. *See id.* at 476, 624 S.E.2d at 383. Nevertheless, before the trial court ruled on plaintiffs' motion for substitution, defense counsel moved for summary judgment as to Dr. Newell, and the court entered an order granting summary judgment " 'in favor of defendant McArthur Newell, M.D. (and his estate).' " *See id.* On appeal, plaintiffs sought review of the merits of the trial court's order granting summary judgment as to Dr. Newell. *See id.* However, this Court determined that we could not address the merits because the trial court had not yet ruled on plaintiffs' motion for substitution pursuant to Rule 25(a) of the North Carolina Rules of Civil Procedure. *See id.* at 482–83, 624 S.E.2d at 386.

Instead, we concluded that, "at the present moment, the trial court's summary judgment order with respect to Dr. Newell has no effect": "it cannot be effective as to Dr. Newell's estate because the executrix for that estate has never been made a party to the action, and it cannot be effective as to Dr. Newell himself because he passed away." *Id.* at 482, 624 S.E.2d at 386; *see also id.* at 483, 624 S.E.2d at 387 ("Substitution in the event of death is not automatic and . . . whether or not to allow substitution must be decided in the first instance by the trial court."). Accordingly, we vacated the trial court's order granting summary judgment in favor of Dr. Newell. *See id.* at 483, 624 S.E.2d at 387.

In the present case, at the time the trial court entered its March 2010 order, Mr. White no longer had the authority to sustain the present action as Guardian of Mrs. Mills' Estate pursuant to N.C.G.S. § 35A 1251(3). However, unlike *Purvis*—in which the court had not yet entered an order on a pending Rule 25(a) motion for substitution at the time of the appeal—in the present case, the trial court below *has* entered a Consent Order Pursuant to Rule 25(a) Substituting Collector of Estate as Plaintiff. In other words, where this Court in *Purvis* concluded that, "[u]nder North Carolina law, there is *currently* no party in favor of whom summary judgment could be granted," *see Purvis*, 175 N.C. App. at 481, 624 S.E.2d at 386 (emphasis added), the same is no longer true of the case presently before us, because such motion has since been decided.

Nevertheless, the consent order substituting Mr. Bland as the named plaintiff in the pending action was signed and entered only *after* the court entered its March 2010 order granting summary judgment in defendants' favor. Moreover, neither party brings forward any argument to address whether, if at all, Mr. Bland's subsequent appointment as Collector of Mrs. Mills' Estate can render the court's earlier error harmless. Rather, defendants assert only that the March 2010 order should be affirmed because it was "entirely consistent" with a letter sent from the court to counsel before Mrs. Mills' death indicating how the court intended to rule on Mr. White's motion, and because Mr. White remained the representative of record after Mrs. Mills' passing. However, defendants do not provide any legal authority to support their assertions as to how such a letter could essentially be deemed a judgment entered by the court in accordance with N.C.G.S. § 1A 1, Rule 58, or how remaining the representative of record after Mrs. Mills' death could somehow imbue Mr. White with the authority to continue as Guardian to Mrs. Mills' Estate in contravention to N.C.G.S. § 35A 1295(a)(3), when " 'the legal entity known

as the life of [Mrs. Mills]' " ceased to exist and Mr. White no longer had legal standing to continue the present action. *See Purvis*, 175 N.C. App. at 482, 624 S.E.2d at 386 (quoting *Pierce v. Johnson*, 154 N.C. App. 34, 40, 571 S.E.2d 661, 665 (2002)). Thus, in the absence of any contrary relevant legal argument presented by the parties, and because, at the time the trial court entered its order denying Mr. White's motion for summary judgment, Mr. White was no longer authorized by statute to continue the action as Guardian of Mrs. Mills' Estate, we vacate the trial court's order allowing summary judgment in favor of defendants and against then-named plaintiff Mr. White, and remand this matter for the court's consideration of those issues, if any, presented by Mr. Bland, as Collector of Mrs. Mills' Estate.

**[2]** Although we are mindful that this Court "ha[s] no jurisdiction to determine matters purely speculative, enter anticipatory judgments, . . . give advisory opinions, answer moot questions, adjudicate academic matters, provide for contingencies which may hereafter arise, or give abstract opinions," *Little v. Wachovia Bank & Tr. Co.*, 252 N.C. 229, 243, 113 S.E.2d 689, 700 (1960), we feel compelled to identify an inconsistency in the record before us that appears relevant to any further consideration of the same claims below. According to the terms of Article VII, Paragraph F of the 1996 POA— excerpted at the outset of this opinion—if another durable power of attorney was executed and acknowledged *before* the 1996 POA was registered with any North Carolina county register of deeds, the 1996 POA "may be revoked" by the execution and acknowledgement of such a document pursuant to the terms of the 1996 POA. Although the parties do not dispute whether Mrs. Mills was competent at the time she executed the 1996 POA, and further agree that the 1996 POA was not registered with the Cabarrus County Register of Deeds until December 2009, the parties presented conflicting evidence in competing affidavits regarding whether Mrs. Mills was competent at the time she executed the 2005 POA. Because the execution and acknowledgement of the 2005 POA could effectively revoke the 1996 POA, provided that a copy of this later-executed power of attorney was also delivered to Mr. Mills—who was named as attorney-in-fact in both the 1996 and 2005 POAs—in a manner that would satisfy the requirements set out in Article VII, Paragraph F of the 1996 POA, it appears that the issue of Mrs. Mills' competence at the time of the execution of the 2005 POA is a question of fact that should be considered and determined by a fact-finder. *See Kessing v. Nat'l Mtge. Corp.*, 278 N.C. 523, 534–35, 180 S.E.2d 823, 830 (1971) ("[N.C.G.S.

§ 1A 1, Rule 56] does not contemplate that the court will decide an issue of fact, but rather will determine whether a real issue of fact exists. . . . If there is any question as to the credibility of witnesses or the weight of evidence, a summary judgment should be denied." (citations and internal quotation marks omitted)).

Vacated and remanded.

Judges ELMORE and HUNTER, JR. concur.