FREDDIE LEE DIXON, SR., AND MABEL DIXON, PLAINTIFFS v. THOMAS L. HILL, ADMINISTRATOR OF THE ESTATE OF JOHN BARBER, AND PALMETTO BORN AGAIN CHURCH OF CHRIST (APOSTOLIC), INC., A/K/A PALMETTO DELIVERANCE CHURCH, DEFENDANTS

No. COA04-86

(Filed 1 November 2005)

## 1. Appeal and Error— preservation of issues—substitution order—notice of appeal—failure to object

The appellate court had no jurisdiction to review defendants' contentions regarding an order substituting the administrator of a deceased party's estate as a party defendant because defendants did not specifically reference the order of substitution in the notice of appeal from a summary judgment order and the record contains no indication that defendants objected to the order of substitution.

## 2. Civil Procedure— substitution of administrator—notice of summary judgment motion

The trial court erred by granting summary judgment in favor of plaintiffs as to the administrator of a deceased defendant's estate who was substituted as a party for the deceased defendant because that he did not receive proper notice of the motion for summary judgment where (1) the order of substitution on 15 September 2003 making the administrator a party to this action was entered on the same day that the court entered the summary judgment order, and defendant administrator was denied the notice required by N.C.G.S. § 1A-1, Rule 56, and (2) a 14 February 2000 order directing the substitution of a nonexistent personal representative or collector did not comply with N.C.G.S. § 28A-18-1 or N.C.G.S. § 1A-1, Rule 25, and the substitution thus did not occur until 15 September 2003.

## 3. Appeal and Error— preservation of issues—failure to raise in trial court

Defendant church's argument that it was not properly served with a summary judgment motion was not preserved for appeal where the issue of proper notice was not raised in the trial court.

**4. Civil Procedure— summary judgment—substitution order on same day—additional name for church—notice**

Defendant church was not deprived of proper notice of a summary judgment motion because the trial court granted a motion for substitution on the same day as the hearing on the summary judgment motion where, with respect to the church, the substitution order only added an additional name by which the church was known; the church was already a party to the action; and the church was not prejudiced by the entry of substitution and summary judgment orders on the same day.

**5. Civil Procedure— summary judgment—supporting affidavit—personal knowledge**

Plaintiff wife's affidavit was not based upon mere information and belief and was competent evidence to support the entry of summary judgment against defendant church in an action for breach of contract, fraud, negligent misrepresentation, conversation, unfair trade practices, unjust enrichment and punitive damages arising from the purchase of a home by the church's bishop using plaintiffs' settlement funds where the affidavit stated that the wife "has personal knowledge of the matters stated herein, except where stated upon information and belief," but the facts stated in the affidavit were all based upon the wife's personal knowledge.

**6. Civil Procedure— summary judgment—unverified answer—unverified discovery responses**

Plaintiffs' motion for summary judgment could not be defeated by defendant church's denials of plaintiffs' allegations in its unverified answer or by defendant's unverified responses to plaintiffs' request for admissions.

**7. Discovery— request for admissions—failure to rebut proper service—failure to respond**

Defendant church failed to demonstrate that it was not served with plaintiffs' request for an admission that the church's bishop was acting as its agent when performing the acts and omissions at issue where the trial court had allowed the church's attorney to withdraw, plaintiffs were required by N.C.G.S. § 1A-1, Rule 5(b) to serve the church directly, and the church offered no evidence that the address on the certificate of service was incorrect. Therefore, the church was deemed to have admitted that the

bishop was acting as its agent where the church failed to timely respond to the request for admissions.

Appeal by defendants from order entered 15 September 2003 by Judge Gary L. Locklear in Robeson County Superior Court. Heard in the Court of Appeals 6 December 2004.

*R. Clark Speaks for plaintiff-appellee Freddie Lee Dixon, Sr.*

*Scott T. Slusser for plaintiff-appellee Mabel Dixon.*

*William L. Davis, III for defendants-appellants.*

GEER, Judge.

On 1 April 1999, plaintiffs Freddie Lee Dixon, Sr. and Mabel Dixon filed suit against John Barber and defendant Palmetto Born Again Church of Christ (Apostolic), Inc. ("the Church"). On 15 September 2003, the Robeson County Superior Court entered two orders: (1) an order substituting as defendant Thomas L. Hill, administrator of the estate of John Barber, for the deceased defendant Barber and modifying the name of the Church to indicate that it was also known as Palmetto Deliverance Church; and (2) an order entering summary judgment in favor of plaintiffs. Defendants Hill and the Church contend on appeal that they did not receive proper notice of the motion to substitute and the motion for summary judgment, that the motion to substitute was improperly allowed, and that genuine issues of material fact exist precluding summary judgment.

We hold that defendants failed to properly appeal from the order of substitution and, accordingly, dismiss that portion of defendants' appeal. Because Hill was substituted as a party on the same day as the court entered summary judgment, we hold that Hill was not provided with notice of the motion for summary judgment as mandated by N.C.R. Civ. P. 56. We, therefore, reverse the grant of summary judgment as to Hill. With respect to the Church, however, we hold that it had proper notice of the motion for summary judgment and that none of the arguments advanced by the Church on appeal warrant reversal of the summary judgment order as to the Church.

<u>Facts</u>

On 20 June 1993, plaintiffs' son, Freddie Lee Dixon, Jr., died in an accident when a tractor-trailer collided with the van in which he was riding. Plaintiffs filed a wrongful death action against the

DIXON v. HILL

[174 N.C. App. 252 (2005)]

company that owned the truck and eventually settled their claim for $111,192.99.

John Barber was bishop of the defendant Church. During the settlement negotiations in the wrongful death action, Barber acted as a spokesperson for plaintiffs and, according to plaintiffs, told them not to talk to their attorneys. Defendants, in their answer,[1] admitted that on 14 June 1994, the same day that plaintiffs received the settlement, plaintiffs gave the $111,192.99 settlement check to Barber. Barber in turn gave them a receipt reciting that the $111,192.99 was "for down payment on stock and on house $35,000.00." Plaintiff Mabel Dixon stated in her affidavit that Barber promised plaintiffs that he "would purchase $75,000.00 worth of orange juice stock which would yield a 10% return per year" and that "he would buy a house for [plaintiffs] with $35,000.00 down payment and $600.00/month for eight (8) years." Defendants' answer "admitted that the Defendant, Bishop John Barber, agreed to arrange for the Plaintiffs to purchase the house located at 3524 Pine Log Road, Lumberton, North Carolina for the sum of $89,000.00 with a down payment of $35,000.00," while defendants' responses to plaintiffs' First Request for Admissions "admitted that John Barber told Plaintiffs that their $75,000.00 would earn 10% interest per year."

Ms. Dixon states in her affidavit that Barber told plaintiffs that he had bought the house, but put it in the name of the Church. According to defendants' answer, the house was "to be held in the name of the church since the Plaintiffs were unable to qualify for financing . . . ." Ms. Dixon explained that plaintiffs moved into the house and began paying the $600.00 per month directly to Barber. Barber never gave plaintiffs a real estate contract for the home and defendants have "admitted that legal title is not owned by Plaintiffs."

Ms. Dixon's affidavit states that after a year, plaintiffs asked Barber about the interest being earned on the orange juice stock. According to Ms. Dixon, Barber answered "that he waited too long to get the interest and that it rolled over into the principal amount for next year." The following year, plaintiffs again asked about the annual return, and Barber gave them a similar response. Defendants have admitted that Barber did not invest the settlement funds in any "orange juice stock" and that none of plaintiffs' money has ever been returned to them.

---

1. The Church and defendant Barber, before he passed away, filed a joint answer and a joint response to plaintiffs' First Request for Admissions.

DIXON v. HILL

[174 N.C. App. 252 (2005)]

With respect to the Pine Log Road residence, Ms. Dixon stated that after the plaintiffs had lived in the house for approximately two years, the home—which the Church stated in its answer was "to be held in the name of the Church"—was deeded to Benny and Geneva Abraham. According to Ms. Dixon's affidavit, the Abrahams' lender foreclosed on the house, and plaintiffs were evicted from their home.

On 1 April 1999, plaintiffs brought suit against Barber and the Church, asserting causes of action for (1) breach of contract, (2) fraud and/or constructive fraud, (3) negligent misrepresentation, (4) conversion, (5) unfair and deceptive trade practices, (6) restitution and/or unjust enrichment, and (7) punitive damages. Defendants filed a joint answer to the complaint on 4 June 1999, admitting some of plaintiffs' allegations and denying others.

On 12 January 2000, Barber died. His will named Fred L. Musselwhite as the executor of his estate. Mr. Musselwhite formally renounced his duties as executor on 20 January 2000. Four days after Musselwhite's renunciation, plaintiffs filed a motion "to substitute the Estate of John Barber and John Barber's personal representative or collector for the Defendant John Barber. Said substitution is made necessary by the death of Defendant John Barber on or about January 12, 2000." The trial court allowed plaintiffs' motion on 14 February 2000. At this time, no person had yet been appointed to replace Musselwhite in the capacity of executor.

Almost two years later, on 7 February 2003, Bishop Thomas L. Hill was appointed as administrator of Barber's estate. On 11 August 2003, plaintiffs filed a motion to substitute Hill, as administrator of the estate of John Barber, as a defendant. In addition, the motion indicated that plaintiffs had learned that the Church also conducted business under the name of Palmetto Deliverance Church. Plaintiffs' motion, therefore, asked to change the identification of the Church from "Palmetto Born Again Church of Christ (Apostolic), Inc." to "Palmetto Born Again Church of Christ (Apostolic), Inc., a/k/a Palmetto Deliverance Church." On the same day, plaintiffs filed a motion for summary judgment, attaching an affidavit of plaintiff Mabel Dixon and plaintiffs' Second Request for Admissions to which the Church had not responded.[2]

Following a hearing on 15 September 2003, the trial court entered an order on the same date allowing the motion to substitute, includ-

---

2. At the time the Second Request for Admissions was served, defendant Barber had passed away and Hill had not yet been appointed administrator of the estate.

DIXON v. HILL

[174 N.C. App. 252 (2005)]

ing the substitution of Hill as administrator of Barber's estate. Also on 15 September 2003, the trial court entered summary judgment in favor of plaintiffs on all seven causes of action asserted in the complaint. The court determined that plaintiffs' damages equaled $127,992.00: the original sum of $111,192.99 given by plaintiffs to Barber plus 28 monthly house payments of $600.00 each (a total of $16,800.00). After concluding that defendants' acts constituted unfair and deceptive trade practices, the court trebled the damages and entered judgment in the amount of $383,976.00. Defendants have appealed.

## The Order of Substitution

[1] Defendants contend that they were not properly served with the motion for substitution. We first note that the notice of appeal states only: "The Defendants hereby gives [sic] Notice of Appeal to the North Carolina Court of Appeals from a final judgment entered on September 15, 2003 by the Honorable Gary Locklear granting Summary Judgment in favor of Plaintiff[s]." The notice of appeal thus does not specifically appeal the order allowing substitution.

Proper notice of appeal requires that the appealing party "designate the judgment or order from which appeal is taken and the court to which appeal is taken . . . ." N.C.R. App. P. 3(d). "Without proper notice of appeal, this Court acquires no jurisdiction." *Brooks v. Gooden*, 69 N.C. App. 701, 707, 318 S.E.2d 348, 352 (1984). N.C. Gen. Stat. § 1-278 (2003), however, provides a means by which an appellate court may obtain jurisdiction to review an order not included in a notice on appeal. It states: "Upon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment." *Id.*

This Court has held that appellate review pursuant to N.C. Gen. Stat. § 1-278 is proper under the following circumstances: (1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment. *Brooks v. Wal-Mart Stores, Inc.*, 139 N.C. App. 637, 641, 535 S.E.2d 55, 59 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 370, 547 S.E.2d 1-2 (2001). All three conditions must be met. *Id.* at 642, 535 S.E.2d at 59.

In this case, defendants have failed to meet the first requirement. Nothing in the record establishes that either defendant timely objected to the order of substitution. Rule 46(b) of the Rules of Civil

Procedure provides, as to interlocutory orders not directed to the admissibility of evidence, that "formal objections and exceptions are unnecessary." Instead,

[i]n order to preserve an exception to any such ruling or order or to the court's failure to make any such ruling or order, it shall be sufficient if a party, at the time the ruling or order is made or sought, makes known to the court the party's objection to the action of the court or makes known the action that the party desires the court to take and the party's grounds for its position.

*Id.* The opposition must specify "what action [the non-movant] wanted the trial court to take and the grounds for that action." *Inman v. Inman,* 136 N.C. App. 707, 712, 525 S.E.2d 820, 823, *cert. denied,* 351 N.C. 641, 543 S.E.2d 870 (2000).

In this case, the record contains no written opposition to the motion to substitute. In addition, as defendants did not file with this Court a transcript of the 15 September 2003 hearing, there is no indication that defendants made any oral objections to the motion to substitute. Accordingly, because defendants did not specifically reference the order of substitution in the notice of appeal and because the record contains no indication that defendants objected to the entry of that order, we do not have jurisdiction to review defendants' contentions regarding the order of substitution.

## Appeal of the Summary Judgment Order by Hill

[2] We agree, however, with defendant Hill that he did not receive proper notice of the motion for summary judgment. The order of substitution making Hill a party to this action in his capacity as administrator of Barber's estate was entered on 15 September 2003, the same day that the court entered summary judgment against defendant Hill. In other words, Barber's estate became liable to plaintiffs on the very same day that it became a party to the lawsuit.

N.C.R. Civ. P. 56(a), governing summary judgment proceedings, provides: "A party seeking to recover upon a claim . . . may, at any time *after the expiration of 30 days from the commencement of the action* . . . move with or without supporting affidavits for a summary judgment in his favor . . . ." (Emphasis added.) Rule 56(c) further provides that any motion for summary judgment must be served on the opposing party at least 10 days before any scheduled hearing on the matter. This Court has held that notice of a hearing on a summary judgment motion must also be given at least 10 days prior to the hear-

ing. *Barnett v. King*, 134 N.C. App. 348, 350, 517 S.E.2d 397, 399 (1999). Here, the action did not commence against the Barber estate until 15 September 2003, the day Hill was joined as a party. Defendant Hill was, therefore, denied the notice required by Rule 56.

Plaintiffs argue, however, that the estate was actually made a party when the trial court on 14 February 2000 ordered "that the Estate of John Barber and John Barber's personal representative or collector be substituted for Defendant John Barber." We disagree. It is undisputed that as of that date, no personal representative or collector existed. Thus, the order did not effectively substitute anyone.

As this Court explained with respect to a lawsuit mistakenly brought against a deceased person named John Daniel Johnson rather than against his estate:

> John Daniel Johnson, a legal entity, is transformed, after death, into the estate of John Daniel Johnson, a legal entity. . . . [T]he life and estate of John Daniel Johnson are inextricably dependent: Death of the person is a point at which a legal transformation to an estate can occur. Once death occurs, the legal entity known as the life of John Daniel Johnson can never again have legal standing.

*Pierce v. Johnson*, 154 N.C. App. 34, 40, 571 S.E.2d 661, 665 (2002). In recognition of this principle, N.C. Gen. Stat. § 28A-18-1(a) provides that upon the death of any person, all right to defend any action existing against the deceased "shall survive . . . against the personal representative or collector of his estate."

As a result, when Barber died, this action did not abate, but it could not be continued against Barber or his estate generally. The action survived only against the personal representative or collector of Barber's estate. *Shaw v. Mintz*, 151 N.C. App. 82, 86, 564 S.E.2d 593, 596 (Greene, J., dissenting) ("An injured party's right to proceed with a claim against a person she claims to have negligently caused her injuries is not abated by the death of the party alleged to have been negligent, as the action survives against the personal representative or collector of the decedent's estate."), *adopted per curiam*, 356 N.C. 603, 572 S.E.2d 782 (2002). The personal representative must then be substituted under N.C.R. Civ. P. 25(a). *In re Estate of Etheridge*, 33 N.C. App. 585, 587, 235 S.E.2d 924, 926 (1977) ("If, as in the case at bar, there is a death of a party to an action, then G.S. 1A-1, Rule 25(a) . . . requires the substitution of either a personal representative *or* a successor in interest.").

The 14 February 2000 order directing the substitution of the non-existent "personal representative or collector" does not comply with N.C. Gen. Stat. § 28A-18-1 or Rule 25. As our Supreme Court has stated, "our statutory scheme for handling claims against decedents' estates presumes the appointment of a personal representative or collector to receive those claims." *Ragan v. Hill*, 337 N.C. 667, 673, 447 S.E.2d 371, 375 (1994). In both *Ragan* and *Shaw*, our courts acknowledged that a plaintiff is unable to proceed with litigation against an estate until an administrator is actually appointed. *Ragan*, 337 N.C. at 673, 447 S.E.2d at 375 ("Once Hill was appointed administrator, plaintiffs were able to proceed with this action against Hill in his role as administrator pursuant to N.C.G.S. § 28A-18-1."); *Shaw*, 151 N.C. App. at 87, 564 S.E.2d at 596 (when the plaintiff filed a timely action against the defendant, who then died, but did not proceed against the estate prior to the running of the statute of limitations, the claim was not necessarily barred because the record did not indicate that any administrator had been appointed).

Thus, the 14 February 2000 order could not operate to substitute Barber's personal representative. That substitution did not occur until 15 September 2003. Because the estate's administrator did not become a party until 15 September 2003, he did not receive proper notice of the summary judgment motion and that order must be reversed as to defendant Hill and remanded for further proceedings.

## Appeal of the Summary Judgment Order by the Church

[3] The Church first argues that it was not properly served with the motion for summary judgment. Plaintiffs respond that "[t]he issue of proper notice was never raised at the trial court level and no objection to the manner of service was ever raised until this appeal."

N.C.R. App. P. 10(b)(1) states: "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." The record contains nothing indicating that the Church objected below on the grounds of improper service. As the appellant, it was the Church's responsibility to ensure that the record contains those materials necessary to determine its appeal. *Hill v. Hill*, 13 N.C. App. 641, 642, 186 S.E.2d 665, 666 (1972) ("It is the duty of an appellant to see that the record is properly made up and transmitted.") Because the Church has failed to

demonstrate that it preserved this objection below, we overrule this assignment of error.[3]

**[4]** The Church argues alternatively that it, like the administrator of Barber's estate, was deprived of proper notice of the summary judgment motion because the trial court granted the motion for substitution on the same day as the hearing on the summary judgment motion. The Church, however, was already a party to this action. With respect to the Church, the substitution order only added an additional name by which the Church was known. Neither the record on appeal nor the Church's appellate brief suggests that the addition of "a/k/a Palmetto Deliverance Church" altered the identity of the defendant. Since the Church was already a party and the Church has not suggested any manner in which it was prejudiced by the entry of the two orders on the same day, the trial court did not err with respect to the Church in considering the motion for summary judgment on the same day that it heard the motion to substitute.

The Church next contends that issues of fact precluded entry of summary judgment on plaintiffs' claims. The North Carolina Rules of Civil Procedure provide that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). In deciding the motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 James W. Moore et al., *Moore's Federal Practice* § 56-15[3], at 2337 (2d ed. 1971)).

The party moving for summary judgment has the burden of establishing the lack of any triable issue. *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party meets its burden, then the non-moving party must "produce a forecast of evidence demonstrating that the non-moving party will be able to make out at least a prima facie case at trial." *Id.* In opposing a motion for summary judgment, the non-

---

3. Plaintiffs have included in the appendix to their brief documentation to support their contention that the Church was properly served. In making its argument, the Church similarly relies upon a document that post-dates the trial court's summary judgment order. Since this material was not presented to the trial court in the first instance, it may not be considered by this Court. That material has not, therefore, been considered in connection with this appeal.

moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." N.C.R. Civ. P. 56(e).

The trial court concluded that the Church was jointly and severally liable to plaintiffs for unfair and deceptive trade practices, fraud/constructive fraud, breach of contract, conversion, negligent misrepresentation, restitution/unjust enrichment, and punitive damages. The court then found that plaintiffs were entitled to compensatory damages in the amount of $127,992.00, which it trebled based on its conclusion that defendant had committed an unfair and deceptive trade practice.

[5] The Church first contends that plaintiffs failed to present sufficient evidence to support summary judgment in their favor, arguing that Ms. Dixon's affidavit is not competent evidence because it was based upon information and belief. *See Currituck Assocs. Residential P'ship v. Hollowell*, 170 N.C. App. 399, 403-04, 612 S.E.2d 386, 389 (2005). That affidavit actually stated that Ms. Dixon "has personal knowledge of the matters stated herein, except where stated upon information and belief." When, however, the facts were actually set out in the affidavit, none of them were qualified as being "upon information and belief." Accordingly, there is no indication in the record that Ms. Dixon lacked personal knowledge with respect to the facts set forth in her affidavit.

[6] Second, although the Church acknowledges that it did not submit any evidence in opposition to the Dixon affidavit, it contends that issues of fact still exist based on the Church's and Barber's denial of the allegations in plaintiffs' complaint and based on the denials contained in their response to plaintiffs' First Request for Admissions. The Church's answer was not verified and, therefore, the denials contained in that answer are not sufficient to defeat summary judgment. *Excel Staffing Serv., Inc. v. HP Reidsville, Inc.*, 172 N.C. App. 281, 288-89, 616 S.E.2d 349, 354 (2005) (holding that the trial court properly granted the plaintiff summary judgment when the defendant relied solely on the denial in its unverified answer).

Likewise, the Church's denials in response to plaintiffs' First Request for Admissions do not give rise to issues of fact for purposes of a motion for summary judgment. Those responses were not verified and, therefore, cannot be deemed to be an affidavit. Nor do they fall within the category of "depositions, answers to interrogatories,

**DIXON v. HILL**

[174 N.C. App. 252 (2005)]

and admissions on file" specified in Rule 56 as material that may be considered. The Church was obligated to present a forecast of evidence—not mere allegations—demonstrating the existence of genuine issues of material fact. *See Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 149 (3d Cir.) ("Although [plaintiff] denied knowledge or information about the helicopter in its responses to requests for admission, its general denial is insufficient to create a genuine issue of fact."), *cert. denied*, 528 U.S. 878, 145 L. Ed. 2d 158, 120 S. Ct. 188 (1999); *Am. Communications Telecomms., Inc. v. Commerce North Bank*, 691 S.W.2d 44, 48 (Tex. App. 1985) ("When an answering party denies or refuses to make an admission of fact [in response to a request for admissions], such refusal is nothing more than a refusal to admit a fact. It is not evidence of any fact except the fact of refusal.").

[7] Finally, the Church argues that summary judgment is improper as to the Church because plaintiffs have failed to present evidence that Barber was acting as an agent of the Church. Plaintiffs' Second Request for Admissions asked the Church to admit that Barber was acting as an agent for the Church when performing the acts and omissions alleged in the complaint. Rule 36(a) of the Rules of Civil Procedure provides that each request "is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection . . . ." It is undisputed that the Church neither responded nor objected to the Second Request for Admissions. Moreover, the record contains no indication that the Church ever moved to withdraw the admissions resulting from its failure to respond. *See* N.C.R. Civ. P. 36(b) ("Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.").

The Church argues, however, that the Second Request for Admissions was not properly served on the Church. The certificate of service dated 22 May 2001 indicated service by mailing to "Bishop Thomas L. Hill" and the "Palmetto Born Again Church of Christ (Apostolic)" at a post office box in Lumberton, North Carolina. The record also includes a return receipt attached to the certificate of service evidencing receipt by Thomas L. Hill on 29 May 2001. The Church does not argue that the address was the wrong address for the Church or that the Church failed to receive the Second Request for Admissions. Instead, the Church contends that proof of service

was insufficient because plaintiffs failed to offer proof that Mr. Hill was an officer, director, or agent of the Church as set out in Rule 4(j)(6) and (8) of the Rules of Civil Procedure.

Plaintiffs were obligated to serve the Second Request for Admissions in accordance with Rule 5 of the Rules of Civil Procedure. Rule 5(b) provides:

> With respect to all pleadings subsequent to the original complaint and other papers required or permitted to be served, service with due return may be made in the manner provided for service and return of process in Rule 4 and may be made upon either the party or, unless service upon the party personally is ordered by the court, upon the party's attorney of record. *With respect to such other pleadings and papers, service upon the attorney or upon a party may also be made by delivering a copy to the party or by mailing it to the party at the party's last known address* or, if no address is known, by filing it with the clerk of court.

(Emphasis added.) As the plain language of Rule 5(b) indicates— contrary to the Church's contention—a party is not required to comply with Rule 4 in serving documents subsequent to the complaint. Instead, Rule 5(b) specifically permits parties to serve another party by mail or delivery to that party's attorney or, if unrepresented, to that party.

Because the trial court had allowed the Church's attorney to withdraw, plaintiffs were required to serve the Church directly.[4] *See* 1 James W. Moore et al., *Moore's Federal Practice* § 5.04[1][b] (3d ed. 1997) ("[I]f a party is no longer represented by an attorney in a particular action, service must be made directly on the party."). Rule 5(b) authorized plaintiffs to serve the Church by mailing the Second Request for Admissions to the Church at the Church's last known address. Once plaintiffs submitted a certificate of service and return receipt indicating service upon the Church, the burden lay with the Church to establish that service was inadequate because the address was not the Church's last known address. *Goins v. Puleo*, 350 N.C. 277, 281, 512 S.E.2d 748, 450-51 (1999) (holding that because the plaintiff made no attempt to rebut the presumption of receipt arising

---

4. The trial court allowed defendants' counsel to withdraw on 23 April 2001, finding that "[d]efendants' counsel has given reasonable notice of his intention to withdraw to Defendants." Plaintiffs mailed their Second Request for Admissions a month later on 22 May 2001.

**DIXON v. HILL**

[174 N.C. App. 252 (2005)]

from a certificate of service and signed return receipt, the plaintiff was presumed to have been properly served with a request for admissions). The Church offered no evidence and has made no argument that the address on the certificate of service was incorrect.

We note further that once the Church's attorney was allowed to withdraw, the Church had an obligation to keep the Court and plaintiffs advised of a current address for the service of papers. *See Freed v. Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 552 (E.D. Pa. 1975) ("All parties have an obligation to keep the Court advised of a current address for the service of papers, either to counsel or the party directly."). A party who does not comply with this obligation "should not thereby be able to foreclose an opposing party from taking full advantage of the procedures which our Rules [of Civil Procedure] allow." *Id.* (granting summary judgment to a plaintiff based on the defendant's failure to respond to a request for admissions after its attorney had withdrawn). *Compare Barnett*, 134 N.C. App. at 351, 517 S.E.2d at 400 (holding that the *pro se* defendant was not properly served with a request for admissions when he had provided the plaintiff with a mailing address for subsequent service of pleadings, but the plaintiff had not used that address).

Because the Church failed to demonstrate that it was not served with the Second Request for Admissions, the Church is deemed to have admitted each of those requests. *Excel Staffing*, 172 N.C. at 285, 616 S.E.2d at 352 ("In order to avoid having the requests deemed admitted, a party must respond within the specified time period."). By not responding, the Church admitted that Barber was acting as its agent. The Church does not present any further argument in its brief regarding whether the undisputed facts set out by the trial court are sufficient to establish liability under plaintiffs' causes of action. We, therefore, affirm the trial court's order granting summary judgment to plaintiffs with respect to their claims against the Church.

### Conclusion

We dismiss defendants' appeal to the extent they seek reversal of the trial court's order of substitution. We reverse the trial court's entry of summary judgment as to Hill, who was substituted as administrator for the estate of Barber, on the grounds that he did not receive proper notice of the motion for summary judgment. The trial court's order granting summary judgment to plaintiffs and against the Church is, however, affirmed.

GOOD HOPE HOSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[174 N.C. App. 266 (2005)]

Dismissed in part, affirmed in part, reversed and remanded in part.

Chief Judge MARTIN and Judge CALABRIA concur.