**FAIRFIELD HARBOUR PROP. OWNERS ASS'N, INC. v. MIDSOUTH GOLF, LLC**

[215 N.C. App. 66 (2011)]

Local 3602's actions were not prohibited by state law and that it is free to post social security numbers as part of the union's business in recruiting former members back into the union. Accordingly, there is a danger that a state claim would interfere with the NLRB's ability to adjudicate this controversy. Therefore, the NLRB's interest in adjudicating controversies committed to it by the NLRA outweighs the State's interests. Thus, the "local interest" exception is inapplicable to the facts before us.

Finally, unlike *General Electric Co.*, plaintiffs make no allegations of "acts of violence and civil disobedience" *See id.* at 157, 266 S.E.2d at 753, that would justify the application of that case to the facts before us. Although plaintiffs alleged potential harm from the posting of the list, as noted above, no actual harm occurred. Accordingly, we find that none of the *Garmon* exceptions are applicable in this case. We conclude that the trial court correctly determined that plaintiffs' claims are preempted by the NLRA and affirm the trial court's order granting defendants' motion for summary judgment and dismissing plaintiffs' claims.[3]

AFFIRMED.

Judges BRYANT and BEASLEY concur.

━━━━━━━━━

FAIRFIELD HARBOUR PROPERTY OWNERS ASSOCIATION, INC. PLAINTIFF v. MIDSOUTH GOLF, LLC, DEFENDANT

No. COA10-384

(Filed 16 August 2011)

**1. Appeal and Error—appealability—failure to appropriately file notice of appeal**

Although defendant failed to appropriately file notice of appeal of a 30 June 2009 order, the Court of Appeals had jurisdiction to review the action under N.C.G.S. § 1-278.

---

**2. Deeds—restrictive covenants—enforcement authority**

The trial court did not err by denying defendant's motions to dismiss based on a 1993 restrictive covenant's alleged failure to provide plaintiff with enforcement authority. A plain reading of the covenant revealed that defendant agreed to maintain the amenities and plaintiff was given the authority to file suit to enforce the restrictive covenants in law or in equity.

**3. Deeds—restrictive   covenants—consideration—radical change—amenities fees**

The trial court did not err by granting summary judgment in favor of plaintiff on its claim that defendant breached the 1993 covenants and on defendant's counterclaim and defenses based on alleged lack of consideration. Defendant was unable to identify changes within the covenanted area that were so radical that they would destroy the original purposes of the agreement. Further, a financial hardship did not qualify as a "radical change" occurring within a community. There was nothing to suggest that defendant's right to collect an amenities fee was unenforceable, and defendant failed to present evidence that the decision of individual lot owners to withhold amenity fees was at plaintiff's direction.

**4. Deeds—restrictive covenants—radical change—failure of consideration—lack of reciprocal benefits and burdens—bad faith**

The trial court did not err in a breach of covenants case by denying defendant's motion for directed verdict on the issues of radical change, failure of consideration, lack of reciprocal benefits and burdens, and bad faith. The Court of Appeals previously concluded there were no genuine issues of material fact as to these issues.

**5. Deeds—restrictive covenants—frustration of purpose**

The trial court did not err in a breach of covenants case by granting plaintiff's motion for directed verdict on the issue of frustration of purpose. The contractual agreement entered into by the parties allocated the potential risk involved in the frustrating event to defendant.

**6. Damages and Remedies—restrictive covenant—motion in limine**

The trial court did not err in a breach of covenants case by denying defendant's motion *in limine* on the issue of damages. The

terms of the restrictive covenant allowed plaintiff to recover damages other than the costs incurred in maintaining the golf courses.

**7. Damages and Remedies—motion for directed verdict—motion for judgment notwithstanding verdict**

The trial court did not err in a breach of covenants case by denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict on the lack of damages issue.

**8. Deeds—restrictive covenants—requested jury instruction—frustration of purpose—damages**

The trial court did not err by failing to give defendant's requested jury instructions on the issues of frustration of purpose and damages. Defendant was unable to establish that the evidence warranted these instructions.

Appeal by Defendant from judgment entered 27 July 2009 by Judge John E. Nobles, Jr. in Craven County Superior Court. Heard in the Court of Appeals 26 October 2010.

*Stubbs & Perdue, P.A., by John W. King, Jr., for Plaintiff-Appellee.*

*Ward and Smith, P.A., by Eric J. Remington, for Defendant-Appellant.*

BEASLEY, Judge.

Where on 27 August 2009 Defendant entered notice of appeal of judgment on "all rulings made by [the trial court] against Defendant during the trial and any pre-trial proceedings," we hold that notice of appeal was proper. Where the trial court denied Defendant's motion for directed verdict on the issues of radical change, failure of consideration, lack of reciprocal benefits and burden and bad faith, and damages, and denied Defendant's motion for requested jury instruction, granted Plaintiff's motion for directed verdict on the issue of frustration of purpose, denied Defendant's motion *in limine* to limit Plaintiff's evidence of damages, we affirm.

---

Fairfield Harbour is a residential community located in Craven County, North Carolina. The community consists of residential homes, condominiums, and timeshares. Additionally, residents have access to two golf courses and a number of other amenities located within the community. All property owners within the community are members of Plaintiff, Fairfield Harbour Property Owners Association, Inc.

FAIRFIELD HARBOUR PROP. OWNERS ASS'N, INC. v. MIDSOUTH GOLF, LLC

[215 N.C. App. 66 (2011)]

In 1975, the original developer of the Fairfield Harbour community recorded the "Supplemental Declaration of Restrictions-Treasure Lake of North Carolina, Inc." ("Supplemental Declaration"). The Supplemental Declaration allowed the developer to charge an annual fee to all residents for the upkeep and maintenance of all recreational amenities. Later, in 1979, Fairfield Harbour, Inc., as the successor in interest to the original community developer, recorded the "Master Declaration of Fairfield Harbour" which allowed Fairfield Harbour Inc., and its successor to assess an amenity fee to all single family lots, town homes, condominiums, and timeshares sold thereafter. On 29 September 1999, Defendant, Midsouth Golf LLC, entered into a contract of sale for the purchase of many of the amenities in Fairfield Harbour including the two golf courses. Defendant purchased the amenities, subject to the 1993 covenants, in March 2000. The 1993 restrictive covenants required Defendant to operate and maintain two golf courses located within the community. Additionally, pursuant to the 1975 and 1979 restrictions, Defendant was also allowed to collect amenity fees for the maintenance of the golf courses.

Residents in the community were categorized as single family residential lots, town homes, condominiums and owners of timeshares. Though the timeshare property owners outnumbered any other category of residents in the community, they were required to pay the same amount in amenity fees as the other residents. In November 2004, Defendant filed suit against the timeshare property owners seeking to address this concern by assessing the timeshare property owners an amenity fee approximately five times more than that assessed to other owners. On 26 July 2006, the trial court determined that the amenity fee provision of the Master Declaration was unenforceable against the time-share property owners. Following the decision, some of the remaining residents of the Fairfield Harbour community stopped paying the amenity fees and began boycotting use of the amenities. Soon thereafter, Defendant closed the golf courses due to insufficient funds. On 22 April 2008, Plaintiff filed the present action generally arguing that Defendant's decision to close the Shoreline Golf Course was a breach of the Declaration of Covenants requiring Defendant to operate and maintain the golf course and its amenities.

On 27 June 2009, the trial court allowed Plaintiff's partial motion for summary judgment, concluding that there was no genuine issue of

material fact as to Plaintiff's assertion that Defendant breached the covenants by closing the golf course. Additionally, the trial court dismissed all Defendant's defenses and counterclaims except the defense of frustration of purpose. The only issues remaining for trial were the amount of damages and the defense of frustration of purpose. Following the trial, the trial court granted Plaintiff's motion for a directed verdict on Defendant's frustration of purpose defense. Defendant appeals the trial court's order.

## Motion to Dismiss

[1] Preliminarily, we address a motion to dismiss filed by Plaintiff in which it seeks to dismiss a portion of Defendant's appeal. Plaintiff contends that because Defendant failed to identify the specific order from which it was appealing, Defendant failed to appropriately provide notice of appellate review. We disagree.

The rules of appellate procedure provide that:

> The notice of appeal required to be filed and served by subsection (a) of this rule shall specify the party or parties taking the appeal; shall designate the judgment or order from which appeal is taken and the court to which appeal is taken; and shall be signed by counsel of record for the party or parties taking the appeal, or by any such party not represented by counsel of record.

N.C.R. App. P. 3(d). Generally, appellate courts only have jurisdiction to hear appeals from those orders specifically designated in the notice of appeal. *Chee v. Estes*, 117 N.C. App. 450, 452, 451 S.E.2d 349, 350 (1994). "Proper notice of appeal is a jurisdictional requirement that may not be waived." *Id.*

In this case, Defendant failed to specifically identify the order from which it intended to appeal. Defendant assigns error to the trial court's order granting summary judgment in favor of Plaintiff filed on 30 June 2009. However, in its notice of appeal to this Court, Defendant merely designated that he was appealing from the judgment entered on 27 July 2009 and "all rulings made by [the trial court] against Defendant Mid-South during the trial and any pre-trial proceedings." As discussed above, the trial court addressed numerous pre-trial and post-trial motions made by the parties. Defendant's appeal from "all rulings" and "pre-trial proceedings" is not a specific designation.

"Notwithstanding the jurisdictional requirements in Rule 3(d), our Court has recognized that even if an appellant omits a certain order from the notice of appeal, our Court may still obtain jurisdiction to review the order pursuant to N.C. Gen. Stat. § 1-278." *Yorke v. Novant Health, Inc.*, 192 N.C. App. 340, 348, 666 S.E.2d 127, 133 (2008). Appellate jurisdiction pursuant to N.C. Gen. Stat. § 1-278 is appropriate under the following circumstances: " '(1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment.' " *Id.* (quoting *Dixon v. Hill*, 174 N.C. App. 252, 257, 620 S.E.2d 715, 718 (2005)).

Though Defendant in this case failed to appropriately file notice of appeal of the 30 June 2009 order, our Court has jurisdiction to review the action pursuant to N.C. Gen. Stat. § 1-278. Defendant timely objected to the trial court's summary judgment order. The North Carolina Rules of Civil Procedure provide that formal objections are not necessary with respect to pre-trial motions "and other orders of the court not directed to the admissibility of evidence[.]" N.C. Gen. Stat. § 1A-1, Rule 46(b) (2009). To preserve an exception to a pre-trial ruling for appellate review, it is "sufficient if a party, at the time the ruling or order is made or sought, makes known to the court the party's objection to the action of the court or makes known the action that the party desires the court to take and the party's grounds for its position." *Id.* Here, Defendant submitted affidavits, arguments, and a memorandum of law in opposition to Plaintiff's motion for summary judgment. Accordingly, Defendant timely objected to the trial court's ruling and satisfied the first element of N.C. Gen. Stat. § 1-278.

The trial court's order granting Plaintiff's motion for partial summary judgment was interlocutory and was not immediately appealable. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993). The trial court's order in this case disposed of many of Defendant's defenses; however, it left the issue of damages and the issue of frustration of purpose for trial. The trial court did not certify the order for immediate appellate review, nor did the trial court's order affect a substantial right held by Defendant.

Finally, the trial court's grant of partial summary judgment "involved the merits and affected the judgment." "An order involves the merits and necessarily affects the judgment if it deprives the appellant of one of the appellant's substantive legal claims." *Yorke*, 192 N.C. App. at 348, 666 S.E.2d at 133. In the current action, the trial court's order dismissed Defendant's counterclaim and several of its legal defenses. Because the trial court's grant of partial summary judgment eliminated one of Defendant's claims and several of its defenses, we hold that Defendant satisfied the third element of N.C. Gen. Stat. § 1-278.

I.

[2] On 24 June 2008, Defendant moved to dismiss Plaintiff's action for lack of standing. The trial court denied Defendant's motion. On appeal, Defendant first argues that the trial court erred in denying its motions to dismiss because the 1993 restrictive covenants did not provide Plaintiff with enforcement authority. We disagree.

"Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002) (quotation omitted). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005). In its motion, Defendant moved to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure.

Standing is properly challenged by a 12(b)(1) motion to dismiss, or 12(b)(6) motion to dismiss for a failure to state a claim upon which relief may be granted. *See Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001) ("[s]tanding concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss"); *see also Street v. Smart Corp.*, 157 N.C. App. 303, 305, 578 S.E.2d 695, 698 (2003) ("A lack of standing may be challenged by motion to dismiss for failure to state a claim upon which relief may be granted"). "The standard of review on a motion to dismiss under Rule 12(b)(1) is *de novo*. The standard of review on a motion to dismiss under Rule 12(b)(6) is whether, if all the plaintiff's allegations are taken as true, the plaintiff is entitled to recover under some legal theory." *Rowlette v. State*, 188 N.C. App. 712, 714, 656 S.E.2d 619, 621 (2008) (internal citations and quotations omitted).

In the present case, under the application of either standard of review, the trial court appropriately determined that Plaintiff had standing to bring its action against Defendant. It is well established that the intention of the parties governs this Court's review of restrictive covenants. *Southeastern Jurisdictional Administrative Council, Inc. v. Emerson*, 363 N.C. 590, 596, 683 S.E.2d 366, 369 (2009). "The original parties to a restrictive covenant may structure the covenants, and any corresponding enforcement mechanism, in virtually any fashion they see fit." *Wise v. Harrington Grove Cmty. Ass'n, Inc.*, 357 N.C. 396, 401, 584 S.E.2d 731, 735 (2003). The parties' intent shall be determined from a thorough examination of all the covenants contained in the instrument or instruments creating the restrictions. *Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967). "Judicial enforcement of a covenant will occur as it would in an action for enforcement of 'any other valid contractual relationship.' " *Page v. Bald Head Ass'n*, 170 N.C. App. 151, 155, 611 S.E.2d 463, 466 (2005) (quoting *Sheets v. Dillon*, 221 N.C. 426, 431, 20 S.E.2d 344, 347 (1942)).

In this case, the restrictive covenants explain that the "Company and Association shall have the right to enforce, by any proceedings at law or in equity, all of the restrictions, conditions, covenants, easements, reservation, liens and charges now or hereafter imposed by the provisions of this Declaration." The covenant also defines "Association" as Fairfield Harbour Property Owners Association. A plain reading of the covenant reveals that Defendant agreed to maintain the amenities, and Plaintiff was given the authority to file suit to enforce the restrictive covenants in law or in equity. While the 1993 covenants contain several provisions that would allow Plaintiff to enter the premises and take over care of the amenities, application of these specific provisions are not relevant to the current action. Instead, Plaintiff exercised its right to file an action to enforce the restrictive covenants. Accordingly, Defendant's contention that the terms of the restrictive covenant did not provide Plaintiff with enforcement authority is without merit.

## II.

**[3]** Defendant next argues that "the trial court erred in entering summary judgment in [Plaintiff's] favor on its claim that [Defendant] breached the 1993 covenants and on [Defendant's] counterclaim and defenses." We disagree.

While Defendant's appeal of this issue raises various claims, counterclaims, and defenses, they are all subject to the same standard of review. A trial court's decision to grant a motion for summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). "[T]his Court must view the record in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor." *Gaskill v. Jeanette Enterprises, Inc.*, 147 N.C. App. 138, 140, 554 S.E.2d 10, 12 (2001). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001).

The party moving for summary judgment may meet this burden by "(1) proving that an essential element of plaintiff's claim is nonexistent, or (2) showing through discovery that plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that plaintiff cannot surmount an affirmative defense which would bar the claim." *Watts v. Cumberland County Hosp. System, Inc.*, 75 N.C. App. 1, 6, 330 S.E.2d 242, 247 (1985), *reversed on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986). Once the burden of the moving party is satisfied, "the burden shifts to the non-moving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, establishing at least a prima facie case at trial." *Stephenson v. Warren*, 136 N.C. App. 768, 772, 525 S.E.2d 809, 811-12 (2000).

Defendant first specifically argues that a radical change in circumstances has destroyed the essential purpose of the covenant, rendering the covenant unenforceable against Defendant. We disagree. "The weight of authority is to the effect that, if substantial, radical, and fundamental changes have taken place in a development protected by restrictive covenants, courts of equity will not enforce the restriction." *Higgins v. Hough*, 195 N.C. 652, ___, 143 S.E. 212, 213 (1928). Our Court has held that restrictive "[c]ovenants may . . . be terminated when changes within the covenanted area are so radical as practically to destroy the essential objects and purposes of the agreement." *Medearis v. Trustees of Meyers Park Baptist Church*, 148 N.C. App. 1, 6, 558 S.E.2d 199, 203 (2001) (internal quotation marks omitted). There is not a bright-line test for determining whether a radical change has occurred and the inquiry depends upon

the facts and circumstances presented in each case. *Id.* at 7, 558 S.E.2d at 204.

Typically, cases in which we contemplated whether a radical change terminated a restrictive covenant involved physical changes in the covenanted area. *See Tull v. Doctors Building, Inc.*, 255 N.C. 23, 38, 120 S.E.2d 817, 827 (1961); *Hawthorne v. Realty Syndicate, Inc.*, 300 N.C. 660, 667-68, 268 S.E.2d 494, 499 (1980); *Sterling Cotton Mills, Inc. v. Vaughan*, 24 N.C. App. 696, 212 S.E.2d 199 (1975); *Barber v. Dixon*, 62 N.C. App. 455, 302 S.E.2d 915 (1983).

In this case, Defendant is unable to identify changes within the covenanted area that were so radical, that they would destroy the original purposes of the agreement. The restrictive covenants require Defendant to maintain and operate the golf course and other amenities in the community. Defendant asserts that because many of the assessed lot owners refuse to pay the required amenity fees, it is unable to comply with the obligations of the restrictive covenants. Defendant fails to cite, nor can we locate, a case in which a financial hardship qualified as a "radical change" occurring within a community. Defendant offers no evidence of changes to the community that would destroy the purpose of maintaining a golf course in the covenanted community. The community remains a residential neighborhood and covenants creating golf courses and amenities for the benefits of those residents are not destroyed.

Next, Defendant contends that the trial court erroneously granted Plaintiff's motion for summary judgment as to Defendant's assertion that a failure of consideration rendered the covenants unenforceable. We disagree.

"Restrictive covenants are considered contractual in nature and acceptance of a valid deed incorporating the covenants implies the existence of a valid contract." *Page*, 170 N.C. App. at 155, 611 S.E.2d at 465. " '[I]n order for a contract to be enforceable it must be supported by consideration.' " *Duncan v. Duncan*, 147 N.C. App. 152, 155, 553 S.E.2d 925, 927 (2001) (quoting *Investment Properties v. Norburn*, 281 N.C. 191, 195, 188 S.E.2d 342, 345 (1972)). Consideration sufficient enough to support a contract consists of " 'any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee.' " *Lee v. Paragon Group Contractors, Inc.*, 78 N.C. App. 334, 338, 337 S.E.2d 132, 134 (1985) (quoting *Brenner v. Little Red School House, Ltd.*, 302 N.C. 207, 215, 274 S.E.2d 206, 212 (1981)).

Typically, our Court will not examine the adequacy of the consideration in a contractual agreement. *Hejl v. Hood, Hargett & Associates, Inc.*, 196 N.C. App. 299, 305, 674 S.E.2d 425, 429 (2009). "[I]nadequate consideration, as opposed to the lack of consideration, is not sufficient grounds to invalidate a contract. In order to defeat a contract for failure of consideration, the failure of consideration must be complete and total." *Harllee v. Harllee*, 151 N.C. App. 40, 49, 565 S.E.2d 678, 683 (2002) (internal citations and quotations omitted). "[W]hen parties have dealt at [arms-length] and contracted, the Court cannot relieve one of them because the contract has proven to be a hard one. Whether or not the consideration is adequate to the promise, is generally immaterial in the absence of fraud." *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 722, 127 S.E.2d 539, 543 (1962).

Here, there was sufficient consideration to support the validity of the restrictive covenants. Defendant argues that because of the time-share decision, and subsequent actions by the residents, there was a failure of consideration and that excused it from its obligation to maintain and operate the amenities. There is nothing here to suggest that Defendant's right to collect the amenity fees was unenforceable. When Defendant took control of the golf courses, they began to collect fees from the assessed owner for the maintenance of the courses. Though there is evidence that many of the assessed property owners are no longer paying the amenity fees and are boycotting the golf courses, the initial contractual agreement remains valid. Accordingly, the trial court appropriately determined that the original contract between the parties does not fail for a lack of consideration.[1]

Next, Defendant contends that the trial court erred in entering summary judgment in favor of Plaintiff because the restrictive covenant's obligations are no longer tied to any reciprocal benefits arising from its ownership of the golf courses. We disagree.

In its brief Defendant asserts that the restrictive covenants imposes reciprocal benefits and burdens upon Plaintiff and Defendant. Because Defendant was no longer receiving the amount necessary in fees to maintain the golf courses, it was no longer required to operate the golf courses. However, language in the restric-

---

1. We also note that the authority and arguments raised by Defendant relate to defense of "frustration of purpose." Because Defendant fails to argue the defense of failure of consideration, it is abandoned on appeal. N.C.R. App. P. 28(b)(6).

tive covenants specifically provides that the restrictions contained within the covenant are severable. Merely because one restriction in the covenant was declared illegal, the enforceability of the other provisions is not affected. Because language in the 1993 restrictive covenants clearly indicates that the restrictive covenants were not intended to afford reciprocal benefits upon the parties, Defendant's argument is without merit.

In its final argument, Defendant contends that the trial court erroneously failed to determine that "by refusing to pay amenity fees and boycotting the use of the amenities, FHPOA, through its members, has acted in bad faith, thus barring its claims." We disagree.

In addition to its express terms, a contract contains all terms that are necessarily implied "to effect the intention of the parties" and which are not in conflict with the express terms. *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973) (citations omitted.) Among these implied terms is the "basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." *Weyerhaeuser Co. v. Godwin Building Supply Co.*, 40 N.C. App. 743, 746, 253 S.E.2d 625, 627 (1979) (citations omitted).

In the present action, there is no evidence indicating that Plaintiff failed to act in good faith to perform its contractual obligations under the agreement. While a number of the assessed lot owners have refused to pay the required amenity fees and are boycotting the golf courses, there is no evidence that these lot owners are acting on Plaintiff's behalf or pursuant to its direction. Plaintiff is an incorporated entity, governed by a board of directors. Defendant failed to present any evidence that the decision of individual lot owners to withhold amenity fees was at Plaintiff's direction. While individual assessed property owners may have breached the terms of the restrictive covenants, these actions are not attributable to Plaintiff. Accordingly, the trial court appropriately determined that there was no genuine issue of material fact as to Defendant's claim of bad faith.

III.

**[4]** Defendant next argues that the trial court erroneously denied its motion for directed verdict on the issues of radical change, failure of consideration, lack of reciprocal benefits and burdens, and bad faith because the evidence presented at trial supports only one conclusion on these issues. We disagree.

It is well established that the "standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991). When determining whether a trial court correctly denied a motion for a directed verdict or a judgment notwithstanding the verdict, "the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor or to present a question for the jury." *Id.* at 323, 411 S.E.2d at 138 (internal citations omitted). As we have already determined that there are no genuine issues of material fact as to these arguments raised by Defendant, we hold that these same arguments also lack merit when viewed under essentially the same standard of review. *See Nelson v. Novant Health Triad Region*, 159 N.C. App. 440, 442, 583 S.E.2d 415, 417 (2003) ("The standard of review for a directed verdict is essentially the same as that for summary judgment."). Accordingly, Defendant's argument is without merit.

IV.

**[5]** Defendant next argues that the trial erred in granting Plaintiff's motion for directed verdict on the issue of frustration of purpose. We disagree.

As discussed above, our Court will review the trial court's order granting Plaintiff's motion for a directed verdict in a light most favorable to Defendant, and determine whether the trial court correctly concluded that no reasonable juror could have found in favor of Defendant. *McDonnell v. Tradewind Airlines, Inc.*, 194 N.C. App. 674, 677, 670 S.E.2d 302, 305 (2009). Articulating the applicability of the frustration of purpose doctrine our Supreme Court has explained that,

> [while] performance remains possible, [it] is excused whenever a fortuitous event supervenes to cause a failure of the consideration or a practically total destruction of the expected value of the performance. The doctrine of commercial frustration is based upon the fundamental premise of giving relief in a situation where the parties could not reasonably have protected themselves by the terms of the contract against contingencies which later arose.

*Brenner v. Little Red School House, Ltd.*, 302 N.C. 207, 211, 274 S.E.2d 206, 209 (1981). However, the doctrine is inapplicable where the frustrating event is reasonably foreseeable. *Id.* Additionally, "if

the parties have contracted in reference to the allocation of the risk involved in the frustrating event, they may not invoke the doctrine of frustration to escape their obligations." *Id.* Essentially the doctrine of frustration of purpose requires proof that: (1) there was an implied condition in the contract that a changed condition would excuse performance; (2) the changed condition results in a failure of consideration or the expected value of the performance; and (3) the changed condition was not reasonably foreseeable. *Faulconer v. Wysong and Miles Co.*, 155 N.C. App. 598, 602, 574 S.E.2d 688, 691 (2002).

In this case, because the contractual agreement entered into by the parties allocated the potential risk involved in the frustrating event at issue to the Defendant, the trial court appropriately granted Plaintiff's motion for a directed verdict. The 1979 Master Declaration states that "if any of the provisions shall be held to be invalid or to be unenforceable or to lack the quality of running with the land, that holding shall be without effect upon the validity, enforceability, or running quality of any other one of the provisions hereof." This language from the master declaration was incorporated into the 1993 restrictive covenants.

Defendant asserts that because the earlier decision of this Court prohibited them from collecting amenity fees from the time share owners, the resulting economic hardship was unforeseeable and a frustration of the purpose of the restrictive covenants. However, a review of the language in the master deed reveals that though one restrictive covenant may be found to be illegal, the other provisions, including those requiring Defendant to maintain and operate the golf course, are still enforceable. Because the risk associated with the frustrating event was allocated to Defendant, the trial court appropriately granted Plaintiff's motion for a directed verdict on the issue of frustration of purpose. Accordingly, Defendant's argument is without merit.

V.

[6] Defendant next argues that the trial court erred in denying its motion *in limine* in which it sought to limit Plaintiff's evidence of damages presented at trial. We disagree.

Preliminarily, we note that "[a] motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if [a party] fails to further object to that evidence at the time it is offered at trial." *State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845

(1995). To preserve issues raised in the motion on appellate review, a party is "required to interpose at least a general objection to the evidence at the time it is offered." *Id.* Here, Plaintiff sought to present evidence of damages through the testimony of its expert witness, Peter Dejack ("Dejack"). Before Dejack testified at trial, Defendant made an objection and renewed its motion *in limine* to exclude Dejack's testimony. The trial court denied Defendant's objection and permitted Dejack to testify. Defendant preserved its argument as to the admissibility of Dejack's testimony for appellate review; therefore, we address the merits of Defendants argument.

At trial, Dejack generally testified as to his inspection of the golf courses located within the community and his preparation of a report in which he estimated the costs to repair and maintain the courses. Defendant contends that because the restrictive covenants limit liability to the amount actually incurred by Plaintiff in maintaining and operating the amenities, Dejack's testimony as to repair and maintenance costs was inadmissible.

The enforcement provisions of the restrictive covenant allow Plaintiff to enforce the terms of the covenant in law or in equity. The terms of the restrictive covenant also provide that should the Defendant fail to satisfy its obligations under the agreement, Plaintiff may take possession of the premises and take action necessary to perform Defendant's duties under the covenant. If the Plaintiff is required to exercise its right to take possession of the premises, Defendant is liable for the expenses incurred by Plaintiff in the exercise of this right. The provision of the restrictive covenant permitting Plaintiff to take possession of the golf course, and file suit to recover the costs in maintaining the amenities is separate from the provisions allowing Plaintiff to seek enforcement of the covenants in law or in equity. A plain reading of the terms of the covenant permits Plaintiff to file a legal action to enforce the terms of the restrictive covenant, or take control of the premises and file suit to recover the costs of maintaining the golf courses. Because the terms of the restrictive covenant allow Plaintiff to recover damages other than the costs incurred in maintaining the golf courses, Defendant's argument is without merit.

VI.

[7] Defendant contends that the trial court erred in denying Defendants motions for a directed verdict and for a judgment

notwithstanding the verdict as to the lack of damages issue. For the reasons stated in the preceding section, we disagree.

## VII.

[8] In his final argument on appeal, Defendant contends that "the trial court erred in failing to give [its] [requested] jury instructions on the issues of frustration of purpose and damages when sufficient evidence was presented to support these instructions." We disagree.

To establish that the trial court erred in failing to provide its requested jury instructions, Defendant must show that "(1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury." *Liborio v. King*, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274 (2002) (quotation omitted). Here, the jury instructions requested by Defendant were not supported by the evidence.

At trial, Defendant requested that the trial court instruct jurors as to the defense of frustration of purpose. Additionally, Defendant requested that the trial court instruct jurors that the amount of damages they elected to award must be based upon costs actually incurred. In the preceding sections, we concluded that the trial court appropriately granted Plaintiff's motions for a directed verdict as to the defense of frustration of purpose and the issue of damages. In reaching this conclusion, we essentially determined that Defendant was unable to establish its arguments on the issue of damages and the defense of frustration of purpose were supported by competent record evidence. *See Gibson v. Ussery*, 196 N.C. App. 140, 143, 675 S.E.2d 666, 668 (2009) (noting that "[i]t is only appropriate for the trial judge to remove a matter from the purview of the jury if there is no evidence in the record that would permit a finding to support the claim.). Likewise, Defendant is unable to establish that the evidence warranted a jury instruction with respect to these issues. Accordingly, Defendant's argument is without merit.

Affirmed.

Judges McGEE and HUNTER, JR. concur.